# Richmond

## Bangor-Punta Operations, Inc., and Rent-a-Cruise of America, Inc. v. Atlantic Leasing, Ltd.

August 28, 1974.

Record No. 730799.

Present, All the Justices.

*(Joseph L. Lyle, Jr.; Pickett, Spain & Lyle*, on brief), for plaintiffs in error.

*(James R. McKenry; Broyles, McKenry, Gorry & Dills*, on brief), for defendant in error.

Harrison, J., delivered the opinion of the court.

Bangor-Punta Operations, Inc., and Rent-A-Cruise of America, Inc., sought to recover, in separate actions, from Atlantic Leasing, Ltd., and Chrysler Corporation the purchase price for two boats sold and delivered to Atlantic. Chrysler filed a demurrer and motion to dismiss, and Atlantic filed a plea of accord and satisfaction and also moved to dismiss. The cases were heard together and consolidated for the purpose of disposition and appeal. The trial court sustained all motions and appellants appealed. We need only consider whether the court erred in finding that a settlement of the controversy between the parties had been reached by their respective counsel.

On October 28, 1969, Bangor sold a 48-foot seagoing houseboat

to Atlantic for $24,545.95 and retained a security agreement lien for the entire unpaid purchase price. On March 9, 1970, Rent-A-Cruise (a division of Bangor) sold a 32-foot cabin cruiser to Atlantic for $10,930. This sale was made on open account. Following delivery of the boats a series of disputes arose relating to defects therein. The boats were taken by Atlantic to Norfolk Shipbuilding and Dry Dock Company for certain repairs. Some of the trouble experienced with the houseboat was attributable to a defective engine which was manufactured by Chrysler and covered by that company's warranty. Chrysler ultimately paid Atlantic $3,311 in settlement of its obligation under the warranty.

As a result of the defects which developed the buyer and sellers negotiated in an effort to arrive at a reduced and mutually acceptable amount to be paid by the buyer for the two boats. Atlantic was represented by James R. McKenry and the sellers were represented by Stanley P. Atwood. The attorneys conferred in person and over the telephone and exchanged correspondence. At the time of their personal meeting they discussed a bill for $4,544.63 submitted by the Norfolk Shipbuilding and Dry Dock Corporation for repairs on the houseboat. Following this conference there was an exchange of letters.

On December 24, 1970, McKenry wrote Atwood that Atlantic would "pay $23,000 total, both vessels". On January 6, 1971, McKenry sent Atwood a telegram advising him that unless the offer was accepted that day it was withdrawn. Atwood testified that he did not accept the offer but dispatched a telegram to McKenry which embodied his counter offer of settlement. This telegram reads: "Received your telegram of Jan. 6 at 4 P. M. Attempted reaching you via telephone four times with no luck. Offer to settle for 25,000 if you pay yard bills and assign complete cause of action against Chrysler Marine to us. Please contact immediately." Atwood said that the "yard bills" referred to therein were the bills due Norfolk Shipbuilding by Atlantic.

Following the dispatch of the last mentioned telegram McKenry and Atwood negotiated further over the telephone. McKenry says that Atwood agreed to accept $23,000 in complete settlement. Atwood says that their agreement was the agreement embodied in his January 6th telegram to McKenry, except that he agreed to reduce the amount from $25,000 to $23,000.

On January 7, 1971, McKenry wrote Atwood, in part:

"This is to confirm that the matter is settled in its entirety with a payment to Bangor Punta Operations, Inc. in the amount of $23,000.00. This will totally release the equipment to Gene Meekins [Atlantic], free and clear of any lien. This $23,000.00 is to pay all late charges, interest, etc. and is an entire and sole payment pursuant to my letter, telegram and our conversation of January 7th. I will forward to you the appropriate releases and check within the next few days."

Atwood testified that the seagoing houseboat was subject to a lien held by General Acceptance Corporation and that he thought McKenry's reference to a lien in his letter of January 7th was to the G. A. C. lien. On January 7th, Atwood wrote McKenry:

"This is to confirm our agreement of January 6th to settle the above matter by payment of $23,000 in certified funds within the next week. As I said the check should be made payable to Bangor Punta Operations, Inc. You will prepare mutual releases. I understand from our conversation that you were paid by Chrysler Corporation the amount you attributed to product problems with the engines in the boat. . . ."

Settlement was not effected within a week from January 7th, and the next exchange between the parties was McKenry's letter of January 21, 1971, inquiring of Atwood about the manner in which the Norfolk Shipbuilding bill was to be handled, as follows:

"One thing I think probably we need to clear up and that is exactly how you want to handle the payment. I would assume you want me to send you $23,000.00 less the $4,056.00 that is owed to Norfolk Ship. If you prefer, I will send you the entire $23,000.00 and you can deal with Norfolk Ship direct."

Atwood testified that at no time did he agree to pay the Norfolk Shipbuilding repair bill out of the $23,000 compromise settlement, and that when he received McKenry's letter he realized that they had never had a meeting of the minds. He then, on January 26, 1971, dispatched to McKenry a telegram reading:

"Because of counter offer received today dated Jan. 21, 1971 and because of your client's default on agreement to settle we have decided to repossess boats and to seek deficiency against your client. I tried to reach you by phone to no avail."

Following the breakdown in negotiations it became necessary for Bangor to repurchase Atlantic's note from General Acceptance Corporation, including accrued interest in the amount of $3,422.14, pay the Norfolk Shipbuilding repair bill of $3,753.33, and pay an additional amount of $796.85 to Norfolk Shipbuilding to place the houseboat in salable condition. Bangor repossessed and sold the houseboat for $15,000 cash which is admitted to be a reasonable price. The cruiser was subsequently sold to satisfy Norfolk Shipbuilding's repair lien thereon and the net proceeds of sale, amounting to $4,252.39, were paid to appellant, Rent-A-Cruise of America, Inc.

The trial court concluded that Atwood's offer contemplated settlement in the amount of $23,000 for both vessels less monies then due Norfolk Shipbuilding. It then ruled that from the agreed $23,000 figure should be deducted $4,253.39 received from the 32-foot boat, $15,000 received from the 48-foot boat and $4,056 due Norfolk Shipbuilding for repairs to the boats. The court further held that Bangor and Rent-A-Cruise were entitled to $900 for attorney's fees and expenses incident to the repossession of the boats and entered judgment in favor of appellants against Atlantic in the amount of $590.61.

Notwithstanding the weight we give to the findings of the trial court, it is our conclusion that its ruling that a settlement contract had been achieved by the attorneys for the sellers and the buyer, and its judgment based thereon, are not supported by the evidence.

The law favors compromise and settlement of disputed claims. This case lends itself to compromise for admittedly the sellers sold and delivered boats in a defective condition. However, the essentials of a valid contract must be present to support a compromise settlement. A compromise to be binding must arise from a complete agreement and before an agreement can be complete there must be an acceptance of an offer. *See Eggleston* v. *Crump,* 150 Va. 414, 143 S. E. 688 (1928) and *Hamman* v. *Miller,* 116 Va. 873, 83 S. E. 382 (1914). In the

instant case the evidence fails to show an accord, a meeting of the minds, between McKenry and Atwood, and the element of completeness is lacking.

We are unable to conclude that the telephone conversation between the attorneys on January 6, 1971, and the mutual exchange of letters on January 7, 1971, constituted an accord. Atwood's response to McKenry's offer of "$23,000 total" was a counter offer of the sellers to accept $25,000 in settlement if Atlantic "pa[id] yard bills" and assigned the claim against Chrysler. Thereafter Atwood reduced the amount that his clients were willing to accept from $25,000 to $23,000, but the record fails to show a meeting of minds as to the other items. There were two outstanding liens on the vessels, one held by Norfolk Shipbuilding for repairs and the other by General Acceptance Corporation for the purchase price. Both had to be released to clear the titles to the vessels. In his letter of January 7, 1971, McKenry did not specify that, in addition to discharging the G. A. C. lien, the sellers were expected to pay Norfolk Shipbuilding the repair bills. It was not unreasonable that Atwood assumed McKenry's reference was to the G. A. C. lien, and that Atlantic would pay the repair bills it had incurred. This is especially true since Atlantic had already effected a direct settlement with Chrysler and received $4,311 in connection with the engine defect which was one reason the boat had to be repaired by Norfolk Shipbuilding.

The trial court erred in sustaining the pleas of accord and satisfaction, and the judgment complained of by appellants will be set aside. The case will be remanded and reinstated on the docket of the lower court for a trial on the merits.

*Reversed and remanded.*