## CIRCUIT COURT OF RUSSELL COUNTY

Clinchfield Coal Co. et al.

v.

International Union,
United Mine Workers of Am., et al.

August 22, 1990

Case No. (Chancery) 12486

By JUDGE DONALD A. McGLOTHLIN, JR.

This matter is before the Court upon the defendant's motion to set aside the December 15, 1989, orders previously entered by this Court, upon the parties' joint motion for "Order Re Dismissal" and upon the several representations of counsel and memoranda filed in support of the parties' positions herein. The Court should note also that two memoranda have been filed by the Center on National Labor Policy, Inc., as *amicus curiae*, in opposition to the plaintiffs' and defendants' joint motion.

On December 15, 1989, this Court entered three orders, one liquidating prospective fines under its sixth contempt order, and two others adjudicating the defendant in contempt and liquidating portions of the prospective fines which had been previously announced on May 16 and June 2, 1989. On January 5, 1990, at 11:30 a.m., the defendants filed a motion to set aside these three orders as being contrary to the law and the evidence along with a motion to postpone the hearing on the motion to set aside. At this time the

parties announced a tentative settlement of the strike "underlying this action." The Court entered its order that day temporarily suspending the three orders of December 15, in order to provide the defendant more time to fully present its arguments and the Court more time to consider the motion to set aside and any other motions the parties might file thereafter.

After having considered the argument of counsel and the authorities submitted, it is the opinion of this Court that the defendants' motion to set aside the orders entered December 15, 1989, must be denied.

The evidence presented by the plaintiffs as to each of the allegations of contemptuous behavior proves without question that the International U.M.W.A. was the author of these actions. The fact that some of the evidence as to the defendants' complicity was circumstantial makes it no less competent or convincing.

Nor can the defendants' protestations that these proceedings were criminal contempt hearings change the fact that they were civil in nature. The Court early on announced its purpose in imposing prospective civil fines, the payment of which would only be required if it were shown the defendants disobeyed the Court's orders. That purpose was to compel compliance with the Court's orders which were entered to protect the rights of the plaintiffs and the public. The fines were conditional, and it was within the defendants' sole power to avoid payment of the fines.

The Supreme Court of the United States in *United States v. United Mine Workers of America*, 330 U.S. 258, 304-305, 67 S. Ct. 677, 701 (1947), has specifically sanctioned the imposition of monetary fines payable to the Court to compel a recalcitrant defendant (the same defendant as in this case) to discontinue a strike it had called. The United States Court of Appeals for the Second Circuit has likewise found that the imposition of fines "*in terrorem*" is authorized as a means of securing future compliance with a decree. *Sunbeam Corp. v. Golden Rule Appliance Co., Inc.*, 252 F.2d 467 (2d Cir. 1958). In that case the defendant was ordered to pay a competitor a $2,500.00 fine for every future sale of the competitor's product in violation of a consent decree. The fine there, as here, was imposed only conditionally and depended upon

the contemnor's future conduct. The contempt sanctions imposed by this Court were civil in nature, not criminal. Thus, defendant had no right to trial by a jury or to a public prosecutor.

Defendants complained of the Court's appointment of counsel for plaintiff as Special Commissioners to collect the fines imposed. This issue is now moot as Messrs. Hodges and Massie have been relieved of those duties.

The remaining grounds assigned by defendants in its motion to set aside are without merit, and the Court over-rules the motion. The Court would comment, though, that the interpretation of the evidence with regard to the existence of "roving pickets" and the understanding of the bases of the Court's findings argued by defendants' counsel belie their intelligence and are tributes to their inventiveness. This Court in its earlier orders specified the sites where picketing would be authorized along with the number of pickets allowed at each site. The evidence presented at all of the hearings showed a constant patterns of pickets locating themselves at various unauthorized places from which they would move to another picket site when police or others attempted to investigate incidents. The evidence of moving or roving picketing was overwhelming.

The parties filed a joint motion for "Order Re Dismissal" on January 24, 1990, when they again represented to the Court that they had come upon a tentative settlement of the strike and asked the Court to rule immediately on this motion even though the proposed agreement had to be submitted to the U.M.W.A. members for a ratification vote, something which had not even been scheduled at that time. The Court conducted two hearings during which it was shown a written agreement entered into by the parties purportedly resolving the many cases in litigation spawned by the strike. At the parties' request, the Court viewed *in camera* a supplemental agreement between them containing portions of their pact which the International Union desired not be made public. Certain "submissions" were made by the defendant in which it proposed to have its membership perform community service work in order to purge itself of contempt. On February 12, 1990, the Court rules from the bench that it would not, upon the evidence, the repre-sentations and the argument presented to that date, vacate its orders imposing the civil fines merely because the

parties agreed it should do so. Thereafter, an additional "submission" was filed by the defendant, increasing the number of hours of community service proposed, together with several additional memoranda by Clinchfield, the U.M.W.A. and the Center on National Labor Policy, Inc. (as *amicus curiae*). Subsequently, there was also proposed to the Court a hearing at which the top leadership and management of the parties would appear to discuss various issues with the Court. The Court was, of course, available for such a hearing, but none was ever scheduled even though several weeks passed after the proposal was made. It appearing that nothing further will be forthcoming on these issues, the Court considers them ripe for adjudication.

The parties have requested dismissal of this lawsuit and dissolution of the injunctions entered. There is no question that upon reaching a settlement of their dispute, these litigants are entitled to have such requests granted. The Court will, therefore, enter an order dismissing plaintiffs' Bill of Complaint for injunctive relief and dissolving all injunctions insofar as they grant relief to the plaintiffs.

The parties have also requested vacation of all orders imposing fines for contempt, including not only those entered December 15, 1989, but also judgments entered more than twenty-one days prior to the filing of the motion. Virginia Supreme Court Rule 1:1 provides that "All final judgments, orders and decrees . . . shall remain under the control of the trial court for twenty-one days after the dates of entry, *and no longer.*" (Emphasis supplied.) Defendants have noted appeals of the orders entered before December 15, 1989, and they are now before the Court of Appeals of Virginia. Having taken the position that these orders are final and therefore ripe for appeal (a position with which this Court agrees), the defendants cannot now argue to the contrary. These orders are beyond the reach of this Court and shall remain undisturbed.

Turning to the December 15 orders now, the Court is told that because this is a civil suit, the litigants are entitled, upon announcing a settlement of their disputes, to have the contempt proceedings dismissed and all fines previously liquidated vacated. The Court is cognizant of the principles of law upon which the argument

is founded but disagrees with the contention that they require in this case the action requested of the Court.

The underlying action upon which these civil contempt proceedings are dependent is, of course, plaintiffs' suit for injunctive relief, the purpose of which was to obtain the preventative power of a court of equity (1) to protect the company from the power of a large labor union unlawfully used against it, and (2) to protect its employees, servants, contractors, their families and members of the general public from defendants' unlawful acts. Clinchfield sought government intervention to prevent the obstruction of private and public rights of ways; the intimidation and coercion of any person's entering or leaving plaintiffs' worksites; the threatening and assaulting of persons; the throwing of rocks and other missiles at vehicles or persons; the placing of devices designed to puncture tires of automotive traffic on private and public roads; the obstruction of the vision of those operating motor vehicles; the following or trailing of company employees and their families, and so on. The Court granted much of the relief requested finding defendants were interfering with the rights of the plaintiffs *and* those of the general public.

Moreover, with the passage of time, defendants' strategy for conducting the strike shifted from acts affecting primarily the company to acts affecting both those members of the public associated with the company and those who had no connection with any of the litigants. The focus and loci of defendants' unlawful conduct shifted from company property and facilities to the public highways and private homes and businesses. So, as the strike proceeded, the protection sought from and granted by the Court was more and more for the general public. Concomitant action by the executive branch of this Commonwealth's government brought scores of Virginia State Police officers, Department of Transportation workers, etc., and millions of dollars' worth of equipment to the task of protecting the rights of not only the litigants, but the general public as well. Thus, when the Court found it necessary to liquidate the prospective fines imposed, and when defendant strenuously objected to awarding them to Clinchfield, the bulk of the fines were made payable to the Commonwealth and the two counties most heavily affected

by the unlawful activity. From its institution, and more and more as it proceeded, this case has involved the protection of the rights of the general public in addition to those of the plaintiffs. In *Gompers v. Buck Stove & Range Co.*, 221 U.S. 418 (1911), the United States Supreme Court employed an analysis of the purpose of a suit and the relief awarded in determining whether litigants are entitled to a dismissal of contempt proceedings. Although in that case, the Court rules in favor of the requested dismissal, analysis of the purpose of this suit and the nature of the relief awarded shows there are substantial differences in the facts there and here, differences so significant as to compel an opposite result.

Additionally, the motion for "Order Re Dismissal" was not made until January 24, 1990, nineteen days after the Court agreed to suspend the operation of its December 15, 1990, orders concerning contempt. Even at that time, their request was not to dismiss the cause, but to enter an order stating the Court's *intention* to dismiss it upon the ratification of the then tentative labor contract and cessation of the strike. The Court's rulings finding the defendant guilty of several counts of contempt, liquidating numerous fines and apportioning them among the plaintiff, Dickenson and Russell Counties and the Commonwealth were announced from the bench December 8, 1989, and reduced to written form by the orders entered December 15, 1989. The effects of these rulings were suspended by order entered January 5, 1990, to allow the Court time to consider defendants' motion to set aside. The request for vacation of the contempt fines came too late.

What is more, the parties announced only *tentative settlement* of their dispute. Even the language of the proposed order was conditional, only to be given effect should the proposed labor contract be ratified by the U.M.W.A. membership. Defendants even argued that the Court's entry of the proposed order was a condition prerequisite to the submission of the contract proposal to its membership. Although the Court is aware that the proposal was indeed ratified by the unions' membership in February, 1990, and the Court assumes that the strike and picketing against plaintiffs has indeed ceased, the Court feels strongly that the parties attempted by these motions to set aside and to dismiss and vacate to manipulate the

Court's decision making process and the orderly disposition of these matters. Basically, the parties attempted to extort the desired ruling from the Court by making it appear final settlement of this bitter, violent labor dispute was contingent upon that favorable ruling. The parties did not act in good faith.

Although the law favors the resolution of disputes by compromise and settlement rather than by litigation, *Bangor Punta Operations, Inc. v. Atlantic Leasing Ltd.*, 215 Va. 180, 207 S.E.2d 858 (1974), the reason for this rule is instructive. Settlement is less expensive and less time consuming. It saves time, effort and expense of the parties, the attorneys and the courts. Compromise and settlement is said to be conducive to more amicable relations between the parties. 15 Am. Jur. 2d *Compromise and Settlement*, § 6. Here, no time can be saved nor expense avoided. The parties' time, effort and money have already been expended; nor will the attorneys' or Court's time be saved -- it has already been consumed; nor will future relations of the parties be affected when both parties have joined in the motion to dismiss/vacate and done their utmost to obtain a favorable ruling.

Here, the parties rested their cases, submitted the issues to the Court, and the Court rules and entered its orders. In effect, the original parties came upon a settlement of their differences after judgment. Had the rulings been such that Clinchfield was the sole beneficiary of the judgments of the Court, it would be simple enough for the parties to effect their object. The judgments, however, made the Commonwealth and two of its political subdivisions recipients of portions of the liquidated fines. Due to the nature of defendants' unlawful conduct, the nature of the relief requested by Clinchfield, and the protection the Court granted, the public, the citizens of this Commonwealth, were necessarily intimately affected and were the intended beneficiaries of the suit and the relief granted. There is a decisive difference between such a case and one involving only the litigants or one in which the Court-ordered protection is focused solely on the litigants. The Supreme Court of the United States has recognized that the payment of fines to the Court is proper remedial relief when payment can be avoided by compliance with the Court's order. *Hicks v. Feioks,*

485 U.S. 624, 99 L. Ed. 2d 721 (1988). Certainly the same is true of fines the Court makes payable to other branches of the government. Where, as here, the public's welfare is so intimately involved and the Court has granted civil contempt relief payable in effect to the public, and where judgment has been announced and entered, the public's interest must be considered. There can be no "settlement" without the consent of at least all those whom the relief granted is intended to benefit. No such consent is present in this case. Neither the Commonwealth, nor the two counties, nor the Court has agreed to the vacation of these fines.

The Court must also take into consideration the fact that the defendants have made no meaningful effort to purge their contempt. The offer to have its members perform a paltry 10,000 or even 20,000 hours of community service to atone for the repeated, massive, violent violations of this Court's orders is an affront to our system of law and to the Court. Likewise, if ever a party has come to the bar seeking equity with unclean hands, the defendants in the case have. Not only have they violated the injunctions put down to protect the plaintiffs and the public, but they have refused to abide by the Court's judgments, e.g. directing payment of fines and service of the orders upon its membership. The International, U.M.W.A. remains defiant and deserves no relief.

This Court's judgments will be given effect to the extent that consent to vacate them is lacking. As the plaintiffs have indicated their consent, and since they can easily have any judgment in their favor marked "satisfied" by the Clerk, so much of the fines as were directed payable to Clinchfield shall be vacated. The remainder shall be paid by the defendants with interest from December 15, 1989. The suspension of those portions of all orders adjudicating contempt, liquidating fines against the defendants, and directing the method and time of payment of the fines shall be terminated and they shall remain intact and in effect. All fines liquidated by the orders entered December 15, 1989, shall be payable to the recipients through the Clerk of this Court no later than ten days after the entry of the order commemorating the rulings herein.

The Court will appoint John L. Bagwell, Esq., of Grundy, Virginia, to act in the place and stead of the Commonwealth's Attorneys of Russell and Dickenson Counties, who have both asked to be disqualified in all these cases, and to act as Special Commissioner in Chancery for the purpose of collecting any unpaid fines due and payable to those political subdivisions and the Commonwealth at a fee to be approved by the Court. The Court shall further direct Mr. Bagwell to take all actions necessary to immediately begin collection of any fines remaining unpaid after the date specified above and to report to the Court his efforts and the results of those efforts at collection.

In its comments from the bench in response to the motions disposed of by the rulings in this opinion, the Court expressed its concern over the need to establish and protect the rule of law and the authority and power of courts to enforce the law. The conduct of the defendants throughout the history of this litigation has certainly given rise to grave concerns over whether they will be governed by the law and the institutions created by to administer the law, or whether they will be permitted to operate outside the rules society establishes for the conduct of affairs amongst its members. Because the judgments heretofore entered are civil in nature and because the contempt proceedings previously had were for the purpose of persuading the defendants to stop violating the rights of plaintiffs and the citizens of these communities and because there is evidence before the Court that the defendants have violated several of this Court's orders and because it is imperative that if the defendants have knowingly violated these orders, they must be made to realize the consequences thereof, the Court is of the opinion that criminal contempt proceedings must be instituted to determine whether the defendants or its members have been guilty of knowingly violating these orders.