COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges O'Brien, Fulton and Callins
Argued at Richmond, Virginia


JAMES WESLEY JOPLIN, SR.

                                                    MEMORANDUM OPINION* BY
v.       Record No. 1642-22-2                  JUDGE MARY GRACE O'BRIEN
                                                         APRIL 23, 2024
TERAE BRENZELL HARRIS


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

John S. Koehler (Law Office of James Steele, PLLC, on briefs), for
appellant.

E. Brandon Ferrell (Wm. Tyler Shands; Kerrigan O'Malley; Carter
& Shands, PC, on brief), for appellee.


James Wesley Joplin, Sr. (appellant) appeals an order dismissing his personal injury

action against Terae Brenzell Harris (appellee) and enforcing an illegible but signed document in

which appellant purported to release all claims in exchange for $25,000.

Appellant asserts three assignments of error. First, he challenges the court's reliance on an

unexecuted release to ascertain and enforce the content of the illegible document, arguing that the

unexecuted release constituted improper parol evidence. Second, appellant contends the court erred

in finding a "unilateral mistake of fact" as to whether his lawyer had authority to agree to the

purported settlement "where the record showed that [appellant's] counsel expressly conveyed to

[appellee's] counsel that the settlement offer had not been accepted." Third, appellant argues the

court erred in finding a "meeting of the minds" to settle the action. For the following reasons, we

reverse.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Appellant brought a $300,000 personal injury action against appellee after a traffic accident. Appellee was driving a rental car from Enterprise Leasing Company of Norfolk/Richmond, LLC (ELCO). ELCO provided liability coverage for appellee's alleged tortious conduct; in addition, appellee's personal insurance carrier, State Farm, provided liability coverage.

The incident occurred on June 2, 2016. On December 22, 2017, ELCO claims-adjustor Galen Powell emailed a release and a $25,000 settlement offer to a law firm representing appellant but received no response.[2] On April 16, 2020, Powell wrote an attorney at the firm to check the status of the release, advising as follows: "To date, we have not received the completed release to settle your client's claim. We presume our offer has been rejected. If our presumption is in error or you have any questions or comments regarding this matter, please contact [me] immediately."

On May 26, 2020, Powell received a call from Theodore Briscoe, a different attorney at the firm representing appellant. While they spoke on the phone, Briscoe instructed his paralegal to "find the release so we can get that over to them." As Briscoe discussed with Powell how to structure the settlement so that only ELCO, and not State Farm, was released, Briscoe's paralegal "found the release and emailed it over during the course of that conversation."[3]

---

[1] We review the evidence in the light most favorable to appellee, the prevailing party below. *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003).

[2] The record does not contain Powell's email transmitting any release, only Powell's computerized file note documenting the correspondence.

[3] The record does not contain the paralegal's email transmitting any signed release, only Powell's computerized file note documenting the phone call and referring to the release being "signed and sent back."

The record does not contain a legible version of any signed release. It does contain a document that is faded and illegible except for (1) appellant's undated, notarized signature;[4] and (2) a typed note beneath the signature reading, "Good afternoon. I was able to get this Doc signed for Miss Britney. If you have any questions[,] please call me." Briscoe, who testified as a fact witness, stated that the faded and illegible document "accurately reflect[s] how it looked in [the law firm's] system the day it was sent to Mr. Powell."[5]

Briscoe testified that he personally had not provided the document to appellant for signing but that it "had already been signed at some date well before [the] call" with Powell. Briscoe explained that appellant had "[a]t least two" prior attorneys and the document had "been signed and in [his law firm's] computer system for at least a year."

Briscoe also testified that when his paralegal sent the document, Briscoe did not believe it was a release of appellant's entire claim, just a release of ELCO. During the call, however, Powell advised that the document was "structured" as a release of appellant's entire claim. Briscoe testified that upon realizing he and Powell "were not on the same page" about the scope of the release, Briscoe specifically asked Powell to "keep that on ice." According to Briscoe, Powell said "okay" and "that he'd talk to his supervisors about it and see if there was some other type of release that they could get to us."

On cross-examination, Briscoe indicated that he had not reviewed the document his paralegal sent to Powell and, at the time, "didn't understand" it to be "a release of [appellee] herself as opposed to a release of simply ELCO and their tendering their policy limits." Briscoe

---

[4] The only date on the document appears with the notary public's signature and seal, indicating that her "commission expires 8/31/2020."

[5] Appellee maintains that she introduced a "more legible" version of the signed document during Powell's *de bene esse* deposition. That exhibit is included in the record and is no more legible than any other version.

testified that he "clearly explain[ed]" to Powell that "there was no intention to settle this entire case" and that it was appellant's intent to maintain his personal injury action against appellee.

Appellee contends that the illegible document was a full release, relying on a legible but unexecuted release that ELCO produced in discovery. The unexecuted release provides that in exchange for $25,000, appellant agreed to "fully and forever release" ELCO and its related entities, appellee, and "all other persons, firms, and corporations" from all losses arising from the June 2, 2016 accident. Appellant testified that he never agreed to settle his entire claim for the $25,000 offered by ELCO, nor did he authorize counsel to enter into any settlement whatsoever.

Powell, who testified via a *de bene esse* deposition, described the unexecuted release as being similar in "format" to the illegible document from Briscoe's law firm. Powell testified that when he received the document during the May 2020 phone call, he discussed with Briscoe "that this release[s] . . . [appellee]." They also discussed a recent statutory amendment that required a "change of format to releases in Virginia" and required "send[ing] notice to the renter." Powell told Briscoe that he would consult ELCO's management and State Farm's counsel to see if the release "was okay to proceed on."[6]

On cross-examination, Powell acknowledged that there were, in fact, two issues he wanted to take up with ELCO's management and State Farm's counsel. In addition to asking whether the release was still valid despite the statutory amendment, Powell wanted to alert them to the disconnect between "what [Briscoe] verbalized versus what he sent" in the document the paralegal emailed. Specifically, Powell "understood [Briscoe] verbalizing that he's not . . . dismissing

---

[6] Although nowhere in the record do the parties specify the statute or amendment, appellant's opening brief suggests that "[p]resumably, the statute is Code § 38.2-2206." That statute addresses the settlement of uninsured motorist claims. 2019 amendments revised subsections (K) and (L)—a so-called "pay and quit" provision and a notice requirement for releases thereunder. 2019 Va. Acts ch. 799. The applicability of the statute is not at issue in this appeal.

[appellant's] case against [appellee]" and was "looking to proceed in suit," even though his office simultaneously returned a release that extinguished appellant's entire claim.

Powell denied that Briscoe had said "anything along the lines of putting the release on ice, disregard" but acknowledged that Briscoe did "explicitly tell [Powell] there was no intention to release [appellee]."

Powell testified that he informed his ELCO supervisor that Briscoe "talk[ed] about pursuing [appellee] continually even though he signed a release" and that Briscoe "specifically said he's continuing his suit." The ELCO supervisor, who said the release was "valid" despite the statutory changes, advised Powell to "contact an attorney on this and make sure" and "then go ahead and send your payment." Powell contacted appellee's lawyer, who had been furnished by State Farm to provide a defense. The substance of their conversation was protected by the attorney-client privilege.

Referring to the signed but illegible document, Powell testified that he did not know who "Miss Brittney" was in the typed note appended to the bottom. Asked if the illegible document was a "release," Powell said that "the document would say 'release,'" but agreed that the word was nowhere legible on the document. Powell maintained that the illegible document "was the release" but acknowledged that "[a]s it's presented in the exhibit, it's faded to the point where I can't see [the word 'release']."

Powell sent a check to Briscoe, who responded that appellant was "not in agreement to settle this claim." Powell then reiterated that "the release settles it and we are issuing payment." Briscoe said that the check would not be cashed and appellant intended to go forward with the suit.

Appellee filed a "Plea of Accord and Satisfaction," which she also referred to in the pleading as a "Motion to Enforce a Settlement." Appellee argued that the parties had settled the

matter through "a signed and executed release agreement" and attached the illegible document. After several continuances, including an allowance of time to take Powell's *de bene esse* deposition, appellee filed a second "Plea of Accord and Satisfaction" that attached the unexecuted release. Not only was the release unexecuted, but it also did not contain the typed "Miss Brittney" note appearing at the bottom of the illegible document.

At a hearing on the plea, appellant argued that appellee could not use the unexecuted release as parol evidence to prove the content of the purported settlement. Appellant further argued the evidence established that appellant's lawyer, Briscoe, had advised Powell that no settlement had been accepted, that appellant had not authorized Briscoe to accept any settlement, and that there was no meeting of the minds to settle.

Appellee countered that the unexecuted release was admissible to prove—and, in fact did prove—the content of the illegible document, that Briscoe had acceded to the settlement with apparent authority to do so, and that any mistake regarding the settlement inured to appellee's benefit.

After considering the evidence and post-hearing briefs, the court granted appellee's plea and dismissed the lawsuit based on accord and satisfaction. In a letter opinion, the court ruled that there had been a unilateral mistake of fact as to whether Briscoe had the authority to settle the case, stating that "based on the signed document, it is reasonable to infer that [appellant's] counsel engaged in settlement negotiations and held himself out as having apparent authority."

The court next determined that the unexecuted release did not violate the rule against parol evidence and was sufficient to prove the content of the illegible document. The court dismissed the matter with prejudice and stated that appellant's "dispute is with the attorneys who held themselves out as having the apparent authority to settle the case, executed a release settling the case[,] and who advised others to keep things 'on ice' until the release issue could be resolved."

ANALYSIS

Appellant argues the court erred in admitting the unexecuted release "as it constituted improper parol evidence to prove the content of the illegible document[,] which [appellee] purported to be a settlement of all claims." The admissibility of parol evidence presents a legal question that we review de novo. *See Va. Elec. & Power Co. v. N. Va. Reg'l Park Auth.*, 270 Va. 309, 315 (2005); *see also Zehler v. E.L. Bruce Co.*, 208 Va. 796, 797 n.2 (1968) ("[T]he parol evidence rule is a rule of substantive law rather than a rule of evidence."). We defer to subsidiary factual findings unless plainly wrong or unsupported by the evidence. *See Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006).

As the party moving to enforce a settlement agreement, appellee had the burden to prove its existence and content. *See Baldwin v. Baldwin*, 44 Va. App. 93, 99 n.1 (2004) ("[T]he party asserting the existence of a[] [settlement] agreement bears the burden of persuasion to prove its existence."); *see also Virginia-Carolina Elec. Works, Inc. v. Cooper*, 192 Va. 78, 80-81 (1951) (stating that "an accord and satisfaction is founded on contract embracing an offer and acceptance" and "[t]he burden [is] on the [moving party] to prove [its] plea"). Because the signed document appellee sought to enforce was illegible, she relied on an unexecuted release to prove that appellant agreed to settle his entire personal injury action and release all potentially responsible parties in exchange for $25,000.

The unexecuted release constituted parol evidence because it was extrinsic to the contract that appellee sought to enforce. *See Worsham v. Worsham*, 74 Va. App. 151, 165 (2022).

> [T]he parol-evidence rule provides that "where [the] parties have reduced their contract to a writing [that] imposes a legal obligation in clear and explicit terms[,] the writing [is] the sole memorial of that contract, and it is conclusively concluded that the writing contains the whole contract, and is the sole evidence of the agreement."

*Id.* (all but first alteration in original) (quoting *Jim Carpenter Co. v. Potts*, 255 Va. 147, 155 (1998)). "When the contract is unambiguous, extrinsic evidence of prior or contemporary discussions, understandings, or agreements is inadmissible 'to contradict or vary the plain language of the instrument itself.'" *Id.* at 165-66 (quoting *Utsch v. Utsch*, 266 Va. 124, 130 (2003)).

Virginia courts have also allowed parol evidence to prove the existence and content of a lost or destroyed document. *See Milan v. Kephart*, 59 Va. 1, 9 (1867) (noting that a rental lease, destroyed by an unknown third party, was "proved . . . by parol evidence"). "[T]he greater the value of the [lost or destroyed] instrument[,] the more conclusive should be the proof of its existence and contents." *Carter v. Wood*, 103 Va. 68, 71 (1904) (quoting *Thomas v. Ribble*, 24 S.E. 241, 242 (1896)). For example, "strong and conclusive" proof of a lost deed's "former existence, its loss, and its contents" is required to "establish a title by parol testimony." *Id.* (quoting *Thomas*, 24 S.E. at 242); *accord Baber v. Baber*, 121 Va. 740, 753 (1917); *see also McLin v. Richmond*, 114 Va. 244, 251 (1912) (finding that a testator's "self-serving declarations" as to his ownership of certain real property in question "[fell] short of that conclusive proof [of title] which the law demands").

The unexecuted release did not violate the general rule against parol evidence because it was not offered to alter or contradict any part of the illegible document. *See Worsham*, 74 Va. App. at 165. Instead, appellee offered it to establish the substance of the illegible document, a situation analogous to proving a lost or destroyed document with parol evidence. *See, e.g.*, *Carter*, 103 Va. at 71. However, because insufficient evidence linked these two documents, the court erred in admitting and relying on the unexecuted release to ascertain the content of the illegible document.

In *Carter*, the Supreme Court cautioned that "the greater the value" of the lost document, "the more conclusive" should be the proof of its terms. *Id.* Here, the value of the illegible document was significant for all parties: it could absolve appellee of all responsibility, and it could preclude appellant from fully vindicating his losses. However, considering the facts of this case, we need not articulate a new standard of proof for admitting parol evidence to substantiate an illegible contractual release. The evidence, even when viewed in the light most favorable to appellee, failed to meet a simple preponderance standard.

Specifically, the evidence was insufficient to prove that the unexecuted release was substantively equivalent to the illegible document. Appellee's evidence merely showed that the unexecuted release was a standard form that ELCO used when offering to pay the policy limits to a claimant. Although the unexecuted release included the parties' names and the incident date, no evidence established that the document matched what ELCO sent to appellant in December 2017. Powell did not testify that the unexecuted release was a copy of that 2017 document; he only stated that it was similar in "format" to the illegible document from Briscoe's law firm. But evidence of a similar format falls far short of proving identical language. Only through speculation could the court conclude that the illegible document matched the unexecuted release and contained the provision settling appellant's entire claim and releasing all parties of liability. Therefore, the unexecuted release was improper parol evidence to establish the content of the illegible document.

Relying on the unexecuted release, the court ignored the overwhelming evidence that appellant did not intend to settle with appellee. It was undisputed that, during the May 2020 phone call, Briscoe repeatedly advised Powell that appellant wanted to proceed against appellee. Powell conceded that he understood what Briscoe "verbalized" about appellant's intent and discussed this intent with his ELCO supervisor and State Farm.

The court also ignored evidence that appellant's signature was undated and the illegible document had been filed away at Briscoe's office for over a year, returned to ELCO not at appellant's direction but during a phone call in which Briscoe made it explicitly clear that appellant's intent was to maintain his action against appellee. Appellant also testified that he never agreed to settle his entire claim for the $25,000 offered by ELCO. Furthermore, the court ignored its own finding that Briscoe told Powell to put any purported release "on ice," instead allowing the illegible document—with terms borrowed from the unexecuted release—to conclusively define and govern a contractual relationship between the parties. By confining its analysis to these documents, without sufficient evidence linking them, the court overlooked ample evidence that appellant rejected any offer to settle with and release appellee. *See Bangor-Punta Operations, Inc. v. Atl. Leasing, Ltd.*, 215 Va. 180, 183 (1974) ("A compromise to be binding must arise from a complete agreement[,] and before an agreement can be complete there must be an acceptance of an offer.")

The unexecuted release constituted improper parol evidence to prove the content of the illegible document, and the court erred in admitting it. This determination is dispositive of the appeal, as without proof of the content of the illegible document, the record contains no enforceable settlement agreement. Accordingly, we reverse without considering the remaining issues. *See S'holder Representative Servs., LLC v. Airbus Ams., Inc.*, 292 Va. 682, 689 (2016) (noting that "a dispositive assignment of error obviates any need to address other assignments of error" (citing *City of Chesapeake v. Dominion SecurityPlus Self Storage, L.L.C.*, 291 Va. 327, 336 (2016))).

CONCLUSION

For these reasons, we reverse the circuit court's judgment dismissing appellant's suit with prejudice and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*