CITY OF HOPEWELL
V.
COUNTY OF PRINCE GEORGE, ET AL.

Record No. 890378

CITY OF PETERSBURG
V.
COUNTY OF PRINCE GEORGE, ET AL.

Record No. 890379

March 2, 1990

Present: Carrico, C.J., Compton, Stephenson, Whiting and Lacy, JJ.,
and Poff, Senior Justice

*Robert W. Wooldridge, Jr. (Charles S. Perry; John F. Anderson; Carl R. Pigeon, City Attorney; McGuire, Woods, Battle & Boothe*, on briefs), for appellant. (Record No. 890378)

*C. Richard Cranwell (Tyler M. Moore; Patrick S. Shiel; H. Martin Robertson, County Attorney; Cranwell, Flora & Moore*, on brief), for appellees. (Record No. 890378)

*Matthew J. Calvert (G. H. Gromel, Jr.; Michael R. Packer, City Attorney; Hunton & Williams*, on briefs), for appellant. (Record No. 890379)

*C. Richard Cranwell (Tyler M. Moore; Patrick S. Shiel; H. Martin Robertson, County Attorney; Cranwell, Flora & Moore*, on brief), for appellees. (Record No. 890379)

Justice Compton delivered the opinion of the court.

In this appeal involving city-county relationships, we consider whether the trial court erred in granting a county's petition for partial immunity from annexation by two adjoining cities.

On April 4, 1985, the City of Petersburg filed a notice with the Commission on Local Government, pursuant to Code § 15.1-945.7(A), stating its intent to petition for the annexation of ap-

proximately 23 square miles of territory in Prince George County. On July 13, 1985, the City of Hopewell filed a similar notice with the Commission for the annexation of about 16 square miles of County territory.

The Commission, as required by the statute, proceeded "to hold hearings, make investigations, analyze local needs and make findings of fact and recommendations." *Id.* In June 1986, the Commission issued a report on the annexation issues and recommended that Petersburg be allowed to annex two County parcels with a combined area of about 4.4 square miles. The Commission also recommended that Hopewell be allowed to annex three County parcels with a combined area of about 8.0 square miles.

Subsequently, the two cities each instituted annexation actions in the court below. The actions were referred to a special three-judge court. *See* Code §§ 15.1-1038 and -1168.

On August 5, 1986, the County filed a notice with the Commission, pursuant to § 15.1-945.7(A), stating its intention to petition for immunity from annexation and new-city incorporation of 13.5 square miles contiguous to Petersburg. On October 27, 1986, the County filed a similar notice relating to an additional 9.1 square-mile area contiguous to Hopewell. The annexation court stayed the annexation actions pending determination of the immunity actions.

During November 1986, the Commission held consolidated hearings on the two immunity petitions and made the required investigation and analysis. In April 1987, the Commission issued its report (the Immunity Report) and recommended that the County's requests for immunity be denied.

In October 1987, the County through its Board of Supervisors initiated the present action by filing a petition for partial immunity of the 22.6 square-mile area considered by the Commission. The special three-judge trial court in this case was duly appointed.

On September 1, 1988, the County filed a motion to modify the area for which partial immunity was sought. This motion reduced the proposed immunity territory to approximately 9.55 square miles consisting primarily of three areas: a portion of Fort Lee, a United States Army facility contiguous to both cities; The Crossings/Jefferson Park (hereinafter, the Crossings), adjacent to Hopewell; and Commonwealth Acres, adjacent to Petersburg.

The immunity trial was held from September 13 through 16, 1988. The trial court toured the area and received the testimony

of six County witnesses and two Hopewell witnesses. The court also received into evidence substantial documentary evidence, the Commission's 184-page annexation report, and the 130-page Immunity Report.

On September 27, 1988, the trial court entered a final order, later amended without substantive changes, granting immunity for the Fort Lee area and the Crossings area but denying immunity for the Commonwealth Acres area. We granted each city an appeal from the December 1988 judgment order in August 1989 and consolidated the appeals.*

The statutes dealing with immunity of counties or parts of counties from city-initiated annexation and city incorporation are contained in Chapter 21.2 of Title 15 of the Code. The following provisions are pertinent to this partial immunity proceeding. One of the Chapter's stated purposes is "to provide a system by which portions of counties may receive immunity from annexation and incorporation of new cities in the future if qualified." Code § 15.1-977.19:1. The court proceeding provided in the Chapter may be instituted only after a statutory administrative proceeding has been conducted by the Commission and concluded. Code § 15.1-945.7. Thereafter, the governing body of the county may petition the circuit court of the county for partial immunity, provided appropriate urban-type services are being provided in the part of the county proposed for immunity. Code § 15.1-977.22:1.

In considering whether appropriate urban-type services are being provided, the trial court must use the list of services set out in the annexation statutes as a guide. They are:

"(a)    Sewerage treatment,
 (b)    Water,
 (c)    Solid waste collection and disposal,
 (d)    Public planning,
 (e)    Subdivision regulation and zoning,
 (f)    Crime prevention and detection,
 (g)    Fire prevention and protection,
 (h)    Public recreational facilities,
 (i)    Library facilities,

---

* The records of this Court show that the consolidated annexation trial commenced on September 25, 1989 and, in an October 1989 order, the court denied and dismissed the cities' requests for annexation. The cities' petitions for appeal from that order are now pending.

(j)   Curbs, gutters, sidewalks, storm drains,
(k)   Street lighting,
(l)   Snow removal, [and]
(m)   Street maintenance; . . . ." *Id.*, Code § 15.1-
      1041(b1)(i).

In addition, § 15.1-977.22:1 provides that the court shall also consider:

"(i) whether the county has made efforts to comply with applicable state policies with respect to environmental protection, public planning, education, public transportation, housing, and other state service policies promulgated by the General Assembly;

(ii) whether a community of interest exists between that part of the county for which immunity is sought and the remainder of the county that is greater than the community of interest that exists between that part of the county for which the immunity is sought and the adjoining municipality; and

(iii) whether either party has arbitrarily refused to cooperate in the joint provision of services."

▮ Also pertinent to these cities, the foregoing statute provides that partial immunity shall not be granted to the county "which would result in substantially foreclosing such a city from expanding its boundaries by annexation." Further, if the court finds that the conditions of the statute have been satisfied, it shall enter an order declaring the immunity. *Id.* After a county is granted immunity, "it shall thereafter retain it." Code § 15.1-977.22:2.

The County, created in 1702 from territory formerly a part of Charles City County, is located south of the confluence of the James and Appomattox Rivers. Bounded in part by those rivers, the County has a land area of 263.72 square miles and, based on 1987 estimates, a population of 28,030 persons.

Petersburg, located south of the Appomattox River, was incorporated as a town in 1748. Presently, the City covers 22.72 square miles and has a population of 39,910 persons, based on 1987 estimates.

Hopewell, located south of the rivers, traces its origin to a settlement in the area dating from 1635. Its land area is 10.06

square miles with a population of 24,460 persons, based on 1987 estimates.

The Fort Lee immunity area consists of 5.99 square miles with a population of 9,947 persons. The Crossings immunity area comprises 0.74 square miles. The Commonwealth Acres immunity area consists of 2.82 square miles. The population of the Crossings area and the Commonwealth Acres area totals 2,154 persons.

The assignments of error raise one pure question of law and several factual issues attacking findings explicit and implicit in the trial court's decision. The County assigned cross-error raising an evidentiary question and a factual issue connected with the denial of immunity for the Commonwealth Acres area.

The question of law is one of statutory interpretation and relates only to the Fort Lee immunity area. The trial court, in its decision set forth in a three-page order, determined that the area has "appropriate urban type services comparable to the type and level of those services furnished by the Cities." The evidence showed that urban-type services are provided to Fort Lee mainly by the federal government and, to some degree, by the County. For example, the County provides recreational and social services, and all public education.

Petersburg, joined by Hopewell, argues that the Fort Lee area fails to qualify for partial immunity because the County is not "the" provider of such services. Conceding that the services at the military installation are generally comparable to the services provided in the adjacent cities, Petersburg contends that the County cannot qualify for immunity when it "provides virtually none of the urban services" on the federal property. We do not agree.

■ When statutory language is clear and unambiguous, it will be given its plain meaning and intent; there is no need for construction by the court. *Brown* v. *Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). The pertinent statutory language is plain and free of ambiguity; it focuses on the *existence* of particular urban services "in" the County, not the *source* of such services.

The immunity statute specifies that "any county which feels appropriate urban-type services *are being provided*, exclusive of those services which are *provided by* a city but inclusive of those services *provided by* cooperative agreement between the county and city, *in* the part of the county proposed for immunity" may petition for immunity. Code § 15.1-977.22:1 (emphasis added). Further, the statute specifies that the trial court shall use as a

guide the foregoing annexation list of services "in determining whether appropriate urban-type services are being *provided in* such part or parts of the county." *Id.* (emphasis added).

■ Thus, the statute bases the grant of partial immunity on whether "appropriate urban-type services are being provided . . . *in* the part of the county proposed for immunity." (Emphasis added.) The statute explicitly prohibits consideration of services provided "by" a city in the proposed immunity area in determining if appropriate urban services are available, except when the city is the provider of the services by cooperative agreement with the county. As the County asserts, the legislature exempted urban services provided by cooperative agreement from the statutory exclusion because of a desire to promote cooperation between counties and cities. Therefore, even though a city is the actual provider of a service, that service can be considered by the court in determining entitlement to immunity if provided by cooperative agreement. No other condition is placed on the source of the services.

■ Accordingly, by use of two different terms, "provided in" and "provided by," the General Assembly made it clear that the appropriate urban services need only be provided "in" a county to be included in the immunity analysis, and need not be provided "by" the county. When the legislature uses two different terms in the same act, it is presumed to mean two different things. *Klarfeld* v. *Salsbury*, 233 Va. 277, 284-85, 355 S.E.2d 319, 323 (1987). Accordingly, we hold that the trial court correctly ruled that the Fort Lee area qualified for immunity, even though the federal government provides the majority of urban-type services on the military installation.

We now turn to factual issues. Both cities dwell on the findings and recommendations of the Commission on Local Government set forth in the Immunity Report. Hopewell says that following "an exhaustive analysis, the Commission issued a 130 page report containing detailed findings of fact that fully supported its recommendation that the County's request for immunity be denied." Continuing, Hopewell argues that the "limited, and largely cumulative, evidence presented to the lower court was insufficient to justify a departure from the Commission's detailed findings and reasoned recommendations." Hopewell charges that the trial court's order granting immunity "contains no findings of fact and does not give any basis for its decision."

Petersburg, likewise contending that the portion of the order granting immunity is not supported by the evidence, attacks the trial court's "sketchy opinion" and complains that the judgment order "does not elaborate upon the basis for the trial court's ruling or the court's reasons for largely rejecting the Commission's recommendations."

These contentions require us at the threshold to determine what force and effect the report of the administrative proceeding before the Commission should have upon the judicial proceeding. Again, the answer to this question is found among the pertinent statutes.

The statute which charges the Commission with responsibility in immunity matters generally provides that the report "shall be admissible in evidence in any subsequent proceeding relating to the subject matter thereof." Code § 15.1-945.7(B). The portion of that statute specifically dealing with the judicial proceeding provides that the report "shall be received by a court" and that the court "shall consider such reports but shall not be bound by its findings or recommendations." Code § 15.1-945.7(C).

The immunity statute also deals with the use of the Immunity Report. The enactment provides that the report "shall be received into evidence, and the court shall receive such additional evidence as the parties may introduce." Code § 15.1-977.22:1.

Consequently, the statutory scheme makes plain that the Immunity Report shall be received in evidence but that the trial court is not to be bound by the report's findings and recommendations. Significantly, there is no statutory requirement that the immunity court write an opinion giving an "exhaustive analysis" of the statutory factors that we noted had been done by the annexation court in *County of Rockingham* v. *City of Harrisonburg*, 224 Va. 62, 75, 294 S.E.2d 825, 831 (1982).

In the present case, the trial court received the Immunity Report in evidence and it was "maturely considered," according to the final order. The statutes require nothing more. Indeed, the enactments are silent on the degree of weight to be accorded the Immunity Report; that is a matter exclusively for the trial court, as the fact finder, to decide. The statutes simply provide for the report's receipt in evidence and consideration by the court along with the other evidence in the case. Manifestly, the trial court in this case has complied with those directives.

Finally, we address the substance of the cities' sufficiency-of-the-evidence argument. The standard of appellate review to be

applied in this case is no different from the standard applicable in other cases. When a case is decided by a court sitting without a jury and, as here, parties object to the decision on the ground that it is contrary to the evidence, the judgment of the trial court will not be set aside "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680. We are convinced from a review of this record, including the trial testimony and the Immunity Report, that the decision below was neither plainly wrong nor without evidence to support it.

The cities challenge the trial court's findings upon only several of the statutory criteria for immunity. Asserting that the evidence with regard to the criteria in issue was without material conflict, the cities argue that the evidence is insufficient to satisfy the community of interest test for the Fort Lee area, and to satisfy the urban services and community of interest tests for the Crossings area. Additionally, the cities argue that the evidence fails to support a finding that Hopewell would not be substantially foreclosed from expanding its boundaries by the immunization of the Crossings area.

The cities incorrectly assert that there was no material conflict in the evidence. They rely almost exclusively, as we have stated, on the report of the Commission. But the September 1988 trial was held almost 22 months after the November 1986 hearings before the Commission. At trial, the County presented additional and current information which, in many instances, was in conflict with the evidence before the Commission and was at odds with the Commission's findings.

For example, on community of interest, the County presented trial testimony of an expert who had conducted an exhaustive survey of over 1,200 households in the cities, in the immunity areas, and in the remainder of the County. The expert defined "community of interest" to be "the degree of integration and compatibility existing between individuals or groups of individuals as measured by the economic, social, political and cultural connections and similarities between them." Based on the survey, the expert opined that: "The community of interest that exists between the remainder of the County and the immunity area is stronger than the community of interest that exists between the immunity area and the City of Hopewell." The expert further testified that: "The community of interest ties that exist between the non-federal part

of the immunity area and the City of Petersburg are not as great as those which exist between the non-federal area and the remainder of the County." These opinions, as well as the findings offered in support of the opinions and other County evidence, were entirely sufficient to support the trial court's community of interest conclusions.

In addition, on the urban services question, the Commission report may be read to express a finding that the Crossings area receives urban services of a type or level comparable to those provided within the adjoining cities. Moreover, this subject was covered by County witnesses, particularly an expert land-use planner.

And, regarding the substantial foreclosure issue, the County's expert testified that 47 percent, or 7.92 miles of Hopewell's boundary, remains open for annexation. This and other County evidence demonstrates that the southern boundary of Hopewell, and a portion of its eastern boundary, is left open for expansion by annexation. Hence, there is no substantial foreclosure.

In conclusion, we deny the County's cross-error. The County complains of the trial court's refusal to receive testimony of economic viability of the County on the question of immunity. In view of our decision favorable to the County on the cities' assignments of error, this issue is moot.

The County also contends that the trial court erred in refusing immunity for the Commonwealth Acres area. We do not agree. The record demonstrates that the trial court was justified in finding against the County on the factual questions of urban services and community of interest relating to Commonwealth Acres.

For these reasons, we hold that the trial court did not err in its immunity rulings and the judgment appealed from will be

*Affirmed.*