397 S.E.2d 856 (1990)
Eugene SINGLETON
v.
INTERNATIONAL ASSOCIATION OF MACHINISTS, DISTRICT 141, LOCAL LODGE NO. 1747, et al.
Record No. 900142.
Supreme Court of Virginia.
November 9, 1990.
*857 David T. Bryant (Rossie D. Alston, Jr., Springfield, on briefs), for appellant.
John J. Sullivan (Michael G. Dzialo, Joseph Guerrieri, Jr., Guerrieri, Edmond & James, Washington, D.C., on brief), for appellees.
Present: All the Justices.
WHITING, Justice.
In this case, we determine the validity of a union security agreement contained in a collective bargaining agreement that requires a private employer at Washington National Airport (National Airport) to condition its employment contracts upon an employee's union membership. To determine whether this union security agreement is enforceable, we must decide whether Virginia's right-to-work law, which forbids such agreements, or a federal law, which permits them, controls.[1]
*858 Except for a reservation not material here, effective in 1946, Virginia ceded exclusive jurisdiction over the territory of National Airport to the United States. Acts 1946, c. 26; Code § 7.1-10(107). Forty years later, in connection with the establishment of an independent airports authority to operate Washington Dulles International Airport and National Airport under a long term lease, Congress adopted the Metropolitan Washington Airports Act of 1986 (the Act). The Act provides in part:
The Commonwealth of Virginia shall have concurrent police power authority over the Metropolitan Washington Airports, and the courts of the Commonwealth of Virginia may exercise jurisdiction over Washington National Airport.
Metropolitan Washington Airports Act of 1986, Pub.L. No. 99-591, § 6009(c), 100 Stat. 3341-387 (codified as amended at 49 U.S.C. app. § 2458(c) (1990)) (hereinafter 49 U.S.C. app. § 2458(c)).
In June 1987, Ogden Allied Aviation Services (Ogden), a private employer, employed Eugene Singleton as an airplane fueler at National Airport. Effective May 1, 1988, Ogden's collective bargaining agreement with the International Association of Machinists, District 141, Local Lodge No. 1747 (the union), was amended to require that all Ogden's employees be union members.
In June 1989, at the union's request, Ogden discharged Singleton because he refused to join the union. However, Ogden told Singleton that he would be reinstated if he joined the union. Singleton did so, and he was rehired.
On August 3, 1989, Singleton filed a bill of complaint in the trial court against Ogden, the union, and James G. Jewell, President of the local union lodge (collectively the defendants). Singleton alleged that those parties were violating the right-to-work laws of Virginia by requiring him to join the union in order to keep his job with Ogden. On November 13, 1989, applying federal law, the trial court denied Singleton's motion for a preliminary injunction and dismissed the case. Singleton appeals.
We begin with a review of the language of the Act. "When statutory language is clear and unambiguous, it will be given its plain meaning and intent; there is no need for construction by the court." City of Hopewell v. County of Prince George, 239 Va. 287, 293, 389 S.E.2d 685, 688 (1990).
Clearly, 49 U.S.C. app. § 2458(c) gave Virginia concurrent police power jurisdiction over National Airport. And, we have held that Virginia may exercise its police power to prohibit union security agreements. Finney v. Hawkins, 189 Va. 878, 885, 888-89, 54 S.E.2d 872, 876, 877-78 (1949). Thus, the question is whether Virginia's exercise of police power forbidding union security agreements shall prevail, even though it conflicts with the retained federal police power permitting such agreements.
This question is answered by the following provision of § 14(b) of the Labor Management Relations Act, 1947, 29 U.S.C. § 164(b): "Nothing in this Act . . . shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State . . . in which such execution or application is prohibited by State . . . law." After describing a conflict between the federal law authorizing union shop agreements and a state statute forbidding them, the Supreme Court said that "it is a conflict sanctioned by Congress with directions to give the right of way to state laws barring the execution and enforcement of union-security agreements." Retail Clerks Int'l Assoc., Local 1625 v. Schermerhorn, 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179 (1963).
Even so the defendants argue, because the federal government retains fee simple title to National Airport, its police power jurisdiction remains paramount. However, 49 U.S.C. app. § 2458(b) provides in part that "[t]he Metropolitan Washington Airports and the Airports Authority shall not be subject to the requirements of any law solely by reason of the retention by the United States of the fee simple title to such *859 airports. . . ." Thus, in plain language, Congress has indicated that its retention of fee simple title should not affect a choice of law issue.
Next, the defendants contend that the Act specifically reserves the bargaining rights of former federal employees at National Airport and indicates a congressional intent to extend the same rights to employees of private employers.[2] We do not agree. On the contrary, the exclusion of one class of employees, i.e., former federal employees at National Airport, from the transfer of police power to Virginia evinces an intent to include all other classes of employees within the Act, i.e., employees of private employers. "If a statute expressly excepts a class which would otherwise fall within its terms, the exception negates the idea that any other class is to be excepted." Reese v. Wampler Foods, Inc., 222 Va. 249, 252, 278 S.E.2d 870, 871 (1981).
Accordingly, we conclude that Virginia's right-to-work law controls. Thus, at National Airport, Virginia law governs employment relationships between private employers and their employees. Because the union security agreement is invalid and unenforceable under state law, the trial court erred in dismissing the case. Therefore, the judgment is reversed and the case remanded for further proceedings.
Reversed and remanded.
NOTES
[1] Virginia's Right to work law is reflected in the following statutory provisions:

Code § 40.1-58: "It is hereby declared to be the public policy of Virginia that the right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization."
Code § 40.1-59: "Any agreement or combination between any employer and any labor union or labor organization whereby persons not members of such union or organization shall be denied the right to work for the employer, or whereby such membership is made a condition of employment or continuation of employment by such employer . . . is hereby declared to be against public policy and an illegal combination or conspiracy."
Code § 40.1-60: "No person shall be required by an employer to become or remain a member of any labor union or labor organization as a condition of employment or continuation of employment by such employer."
Code § 40.1-65: "Any agreement, understanding or practice which is [designed] to cause or require any employer . . . to violate any provision of this article is hereby declared to be an illegal agreement, understanding or practice and contrary to public policy."
Code § 40.1-67: "Any . . . person . . . injured as a result of any violation . . . of any provision of this article . . . shall be entitled to injunctive relief against any and all violators. . . ."
The federal law is expressed in 29 U.S.C. § 158(a)(3). It provides in pertinent part that "nothing in this Act, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization. . . to require as a condition of employment membership therein. . . ." This provision "articulates a national policy that certain unionsecurity agreements are valid as a matter of federal law . . . ." Oil, Chemical and Atomic Workers, AFL-CIO v. Mobil Oil Corp., 426 U.S. 407, 416, 96 S.Ct. 2140, 2145, 48 L.Ed.2d 736 (1976).
[2] Section 2453(3) defines "employees" as "all permanent Federal Aviation Administration personnel employed [by the Metropolitan Washington Airports, an organization within the Federal Aviation Administration] on the date the lease. . . takes effect . . . ."

Section 2454(c)(6)(D) provides that: "The Airports Authority shall continue all collective bargaining rights enjoyed before the date the lease takes effect by employees of the Metropolitan Washington Airports."
Section 2457(b)(2) provides that: "The arrangements made pursuant to this section [lease and operating arrangements] shall assure, during the 50-year lease term, the continuation of all collective bargaining rights enjoyed by transferred employees retained by the Airports Authority."