JAMES M. WOODWARD

V.

COMMONWEALTH OF VIRGINIA,

DEPARTMENT OF CORRECTIONS

AND

DEPARTMENT OF TRANSPORTATION

No. 2134-92-4

Decided December 28, 1993

COUNSEL

Roger A. Ritchie (Roger Ritchie and Partners, on brief), for appellant.

Donald G. Powers, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**MOON, C.J.**—Appellant James Woodward, a prisoner, was injured on September 21, 1990, while topping and trimming a tree in Warren County, Virginia, as part of a crew doing road work under an agreement between the Department of Transportation (DOT) and the Department of Corrections (DOC). Woodward argues that prisoners who prove a contractual relationship between themselves and state agencies are included in the definition of "employee" under Code § 65.1-4. We agree and reverse the commission's decision denying Woodward workers' compensation benefits.

An agreement between the DOT and DOC calls for payments by DOT to DOC at the rate of $2.00 per hour for each person in the road gang. Prisoners are selected by DOC for their suitability to do work on the state roads. Prisoners do not have to work. However, those prisoners who volunteer for work assignments and are selected by the Institutional Classification Committee are appointed to various jobs. Prisoners are paid between 23 cents and 45 cents per hour for periods worked. Income received from DOT is part of DOC's budget. Inmates who work on the crews keep their time, are paid on an hourly basis, and are compensated based upon the prison pay scale.

After being interviewed by the Institutional Classification Committee, Woodward was selected to work on one of the road crews. He was paid 27 cents per hour for his work as a tree trimmer for DOT.

Woodward sustained injuries to his spine when the top of a tree that he was cutting fell and pinned him in the tree. At the time of his injury, Woodward was incarcerated and worked on a "gun-gang" under supervision of an armed guard of DOC and a foreman of DOT. DOT picked up the inmates and supervised the work crew, and DOC furnished a guard for the work crew. It is uncontroverted that DOT would have had to use a private contractor or DOT employees to perform the job if correctional inmates had not been used.

The deputy commissioner held that Woodward was an employee of the Commonwealth and eligible for compensation. The Commonwealth appealed to the commission, which reversed the deputy commissioner and held that Woodward was not an employee of the Commonwealth and that the Commonwealth was not Woodward's employer under the provisions of the Virginia Workers' Compensation Act. The commission also found that based upon Woodward's status, "he was not at liberty to contract unilaterally for personal services with either the Department of Corrections or the Department of Transportation."

█ "The Workers' Compensation Act has always been liberally construed for the benefit of employees and their dependents." *Chesapeake & Potomac Tel. Co. v. Williams,* 10 Va. App. 516, 519, 392 S.E.2d 846, 848 (1990). In Code § 65.2-101, the General Assembly set up an operational definition of "employee."[1] The statute includes eleven separate paragraphs, in which various exclusions are made from the general definition of employee. Prisoners are not listed as an exception. Absent a statute governing workers' compensation coverage of prisoners, entitlement depends on whether the claimant worked under a contract for hire. *See* 1C Arthur Larson, *Workmen's Compensation Law* §§ 47.00, -31(F) (1986).

Although no case law in Virginia has addressed this issue, the workers' compensation commission has ruled on the issue of prisoners collecting workers' compensation in various situations. In this case, the commission cited *Stanley v. Commonwealth of Virginia, Department of Highways,* 52 O.I.C. 244 (1970), and *Hall v. Wise*

---

[1] The definition of employee under Code § 65.2-101 includes "[e]very person . . . in the service of another under any contract of hire . . . written or implied."

*County Board of Supervisors,* 7 O.I.C. 111 (1925), as precedent to support its conclusion that Woodward should be denied benefits. However, the *Stanley* and *Hall* cases are distinguishable from this case on the facts alone.

The claimant in *Stanley* was injured when he fell from a receiving cell located within the prison confines. Stanley merely proved that he was working on a "hard labor road gang" when he aggravated his injury. The factual details are not set forth in the opinion, but the commission found that Stanley did not prove he was working pursuant to a contract. The claimant in *Hall* was sentenced by a judge to work on a road gang for the Department of Highways, and was given no option to refuse. Thus, there was no contractual relationship.

■ Here, Woodward's evidence established that he worked pursuant to an agreement that contained all of the elements of a contract. The essential elements of a contract are an offer and an acceptance, supported by valid consideration. *See Gunn v. Richmond Community Hosp.,* 235 Va. 282, 286, 367 S.E.2d 480, 482 (1988); *Montagna v. Holiday Inns, Inc.,* 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980). "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981).

> Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer. . . . Acceptance by performance requires that at least part of what the offer requests be performed or tendered and includes acceptance by a performance which operates as a return promise.

*Id.* § 50. "To constitute consideration, a performance of a return promise must be bargained for." *Id.* § 71(1).

DOT and DOC, through the Industrial Classification Committee, unequivocally offered Woodward a paid position trimming trees. Woodward verbally accepted the offer. DOC and DOT acknowledged his acceptance by putting him to work on a road gang. The contract also contained sufficient consideration. If Woodward chose to work, he was paid 27 cents an hour. If he did not work, he was not paid.

This case is also factually distinguishable because, unlike the claimant in *Hall,* Woodward was injured outside of the prison con-

fines while working for DOT, and unlike the claimant in *Stanley*, Woodward proved he was working pursuant to a contract. He was not forced to work, but did so on his own volition pursuant to an opportunity offered by DOC and DOT.

■ "The Workers' Compensation Act . . . leaves the determination of the nature of the relationship to the common law." *Hamilton Trucking v. Springer,* 10 Va. App. 710, 711, 396 S.E.2d 379, 379 (1990). "The elements of an employment relationship are: (1) selection and engagement of the employee, (2) payment of wages, (3) power of dismissal, and (4) power of control of the employee's action. The most important of these is the element of control." *Behrensen v. Whitaker,* 10 Va. App. 364, 366, 392 S.E.2d 508, 509 (1990).

Code § 53.1-41 does not require DOC to force prison inmates to work, but instead provides that where it is "feasible" DOC shall provide its inmates with "opportunities to work." The same section provides that the "work opportunities *may* include . . . highway maintenance and construction" and inmates "may be employed to improve . . . or cultivate public property or buildings." *Id.* (emphasis added).

Woodward entered into a working relationship with DOC and DOT of his own volition. He was selected and engaged in performing the tree-trimming work because of his special skill in this area and his willingness to work for DOT.

Pursuant to Code § 53.1-42, which mandates that prisoners be paid "for each day of labor," Woodward was paid 27 cents per hour while performing his employment tasks. In fact, the "Inmate Employee Compensation Plan" refers to "pay" or "wages" that "employees" are to receive for each hour of work, after they are "hired."

DOT's power of dismissal is also found in the DOC inmate pay system, which states that supervisors and managers may dismiss inmates from employment. There is no dispute that Woodward was under the direct supervision and control of DOT, by and through its representative at the job site. Woodward was also subject to dismissal by DOC and DOT supervisors for unsatisfactory performance.

DOC required DOT to pay an hourly rate for each hour of employment. DOC would then off-set costs of maintaining facilities and pay the inmates a set wage from the remainder. This situation is similar to arrangements for work-release prisoners and other "loaned" employees. It cannot be seriously argued that if Woodward performed his

work for DOT in accord with the agreement, he could not enforce his contract for wages.

The commission's reason for denying benefits to Woodward was because, as a prisoner, he was unable to contract. This appears to be the theory upon which the *Stanley* and *Hall* cases were decided as well as the theory of most jurisdictions denying benefits to prisoners. 1C Arthur Larson, *supra,* § 47.31(a). However, in Virginia, prisoners are not legally incompetent to enter into contracts. *Cross v. Sundin,* 222 Va. 37, 38-39, 278 S.E.2d 805, 806 (1981); *Dunn v. Terry,* 216 Va. 234, 239, 217 S.E.2d 849, 854 (1975). For example, work release participants are entitled to workers' compensation benefits from their civilian employer. *Owens v. Swift Agric. & Chem. Corp.,* 477 F. Supp. 91, 93 (E.D. Va.), *aff'd,* 612 F.2d 1309 (4th Cir. 1979).

It is also noteworthy that the Commonwealth would have had to hire other employees had Woodward not performed his job as a tree-trimmer. Guy Nicholson, a correction sergeant at the White Post Correctional Center, testified that prisoners in the gun-gang were used in lieu of the Highway Department hiring private individuals or using their own employees to perform the work. These alternative workers would have been covered under workers' compensation as statutory employees. *See* Code § 65.2-302. The underlying legal principle is as follows:

> [c]ontractors, subcontractors, and all workers who are engaged in the trade, business, or occupation of the owner of a project are deemed to be statutory fellow employees. The remedy for any injury suffered by one of them as a result of the alleged negligence of another, while engaged in the trade, business, or occupation of the owner, is limited to that available under the Workers' Compensation Act.

*Nichols v. VVKR, Inc.,* 241 Va. 516, 519, 403 S.E.2d 698, 700 (1991).

Professor Larson's treatise contains a separate section criticizing any noncompensability of prisoner injuries in a situation similar to the one at bar.

> Although the basic rule denying compensation to prisoners seems to be a correct application of any statute requiring a "contract of hire," the result may in some circumstances be out of tune with the conditions of modern society. It is well known that many prisons nowadays operate elaborate factories, making

twine, license plates, clothing, furniture, and other things. Prisoners also are lent to highway departments for road work in some states. All the external features and all the risks of ordinary employment are present.

1C Arthur Larson, *supra,* § 47.31(e).

Although the authorities are in general agreement that prisoners injured in activities similar to the injuries sustained by the prisoners in *Stanley* and *Hall* are not covered by workers' compensation, there have been few reported cases with facts similar to Woodward's. Many state statutes now allow compensation in such cases,[2] while others by specific statute deny compensation.[3]

Finally, the Commonwealth argues that because the commission adopted a narrow interpretation of the definition of "employee" within the statute, and because in 1975 the legislature repealed a statute providing prisoners compensation for injuries sustained while working, this Court should affirm the commission's decision.[4]

■ "When statutory language is clear and unambiguous, it will be given its plain meaning and intent; there is no need for construction by the court." *City of Hopewell v. County of Prince George,* 239 Va. 287, 293, 389 S.E.2d 685, 688 (1990). Thus, we should apply the act as written. *See General Accident Fire & Life Assurance Co. v. Aetna Casualty & Sur. Co.,* 208 Va. 467, 474-75, 158 S.E.2d 750, 755

[2] Examples of states which have extended workmen's compensation coverage to inmates by statute include: California, *see* Cal. Lab. Code § 3370 (West 1989) (each inmate of a state penal institution shall be entitled to the workers' compensation benefits for injury arising out of and in the course of assigned employment); South Carolina, *see* S.C. Code Ann. § 42-1-480 (Law. Co-op. 1986) (state inmates who suffer an injury for which compensation is specifically prescribed are eligible for workers' compensation); and Maryland, *see* Md. Code Ann., Lab. & Emplmnt, § 9-221 (1991) (prisoner is a covered employee if county pays him a wage or stipulated sum and he sustains permanent partial or permanent total disability).

[3] Examples of states which statutorily deny compensation coverage to inmates include: Florida, *see* Fla. Stat. § 946.002(5) (West 1985) (prisoner is not considered an employee of the state; nor does a prisoner come within any other provision of the Workmens' Compensation Act); West Virginia, *see* W. Va. Code §§ 23-4-1e(b) (Supp. 1993) (no prisoner who suffers injury during work which is imposed upon him during incarceration is compensable); and Wyoming, *see* Wyo. Stat. § 27-14-404(f) (1991) (prisoner not eligible for workers' compensation for injuries suffered during the period of incarceration).

[4] The amount of compensation was not to exceed that allowed pursuant to workers' compensation guidelines. However, the benefits were paid for injuries sustained during "work." No other similarity to benefits under workers' compensation were applicable. Act of April 8, 1974, ch. 583, 1974 Va. Acts 1130, 1130-31 (codified at Code § 53-222.1), repealed by Act of March 13, 1975, ch. 266, 1975 Va. Acts 456, 456.

(1968). Similarly, deference to agency interpretation is irrelevant when it is contrary to the plain meaning of a statute. *Commonwealth v. Jones,* 194 Va. 727, 731, 74 S.E.2d 817, 820 (1953).

The plain language of the Act includes prisoners who work under the type of contractual arrangement between Woodward, DOC and DOT. If prisoners as a class of persons are to be excluded from the Workers' Compensation Act, it is the sole province of the legislature, not the commission, to make such a determination.

Because Woodward's contractual employment is not specifically excluded under the statute, we hold that he is entitled to compensation. We, therefore, reverse the commission's decision and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

Fitzpatrick, J., and Duff, J., concurred.