JAMES GUNN, GUARDIAN, ETC.

V.

RICHMOND COMMUNITY HOSPITAL, INC.

Record No. 850270

April 22, 1988

Present: All the Justices

*Brian C. Shevlin (Joan E. Jennings; Joseph A. Bambacus; Shevlin, Artz & Curtis, P.C.; Bambacus & Parthemos*, on briefs), for appellant.

*Martin A. Donlan, Jr. (Crews, Hancock & Dunn*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

This appeal arises in a negligence action for medical malpractice instituted by the guardian of an incapacitated person. The question presented is whether a circuit court is authorized to force the guardian to accept an offer of compromise over the objection of the guardian and his attorneys.

On September 10, 1981, Jannie Lee Jackson was injured while a surgical patient in a hospital operated by appellee Richmond Community Hospital, Inc. At the time, she was under the care and treatment of two physicians, a specialist in obstetrics and gynecology and an anesthesiologist. The patient became totally and permanently disabled due to brain damage. On December 4, 1981, the court below adjudicated her to be incapacitated and appointed appellant James Gunn her guardian.

Subsequently, the guardian brought separate tort actions against the physicians and the hospital seeking recovery of damages for his ward's injuries. The cases were consolidated for trial.

On December 20, 1984, within a month of the date scheduled for trial, the defendants filed a joint "Motion to Approve Compromise Settlement and to Conserve the Estate of an Incapacitated Person." The motion recited that, while denying liability to the plaintiff, the defendants had offered to compromise and settle the plaintiff's claim by payment of $750,000 in return for a complete release of liability. The motion further recited that defendants had

"communicated the proposed settlement to counsel for the Plaintiff who have not agreed to the acceptance of the proposal," and that defendants believed "the Court should approve the compromise and settlement as being in the best interest of the Plaintiff." The motion also asserted that refusal to accept the settlement proposal constituted "mismanagement" of the ward's estate and that the court was obliged to prevent such mismanagement.

During four days in December 1984 and January 1985, the trial court met with the guardian and counsel for the litigants to discuss the motion. On December 27, the court appointed an experienced attorney as guardian ad litem "for the purpose of making a report to the Court on the Motion."

As the result of further negotiation among counsel, the settlement offer was modified from payment of a lump-sum amount to a proposed "structured" settlement with sums payable in increments during the life expectancy of the 39-year-old ward. Finally, during this period, counsel for the plaintiff and counsel for the physicians agreed upon a compromise. This settlement was approved by the court and those two actions were dismissed with prejudice, preserving the plaintiff's rights, under a covenant not to sue, against "other persons or organizations."

More discussions on the motion to approve a settlement took place among the court, the guardian and his counsel, the guardian ad litem, and counsel for the hospital. The hospital offered to pay an additional $125,000 to compromise the plaintiff's claim against it. The offer was rejected by the guardian whose counsel labelled it "unconscionable."

During the discussions, the trial court considered detailed information about the ward's physical and emotional condition, the expenses of her care in the nursing facility where she was residing, her future medical and other expenses, and the ultimate amount of funds to be generated by the settlement with the physicians. In addition, the court reviewed possible uncertainties of the litigation as well as possible limitations upon the monetary recovery against the hospital. These limitations involved the existing, statutory "cap" on medical malpractice awards, the effect of the indemnity provisions of the covenant not to sue on any amount recovered from the hospital, and the status of the hospital as a charitable institution.

The trial judge, after much deliberation and after stating that the "situation" had "borne very heavily" upon him, decided "to

settle the hospital's claim under what I think is the Court's inherent authority to do so under [Code §] 8.01-424." On January 11, 1985, the trial court entered the order from which we awarded the guardian this appeal. The court found that the ward's "best interest" would be served "by acceptance of the settlement offer" of $125,000.

The hospital argues the trial court had the power to enter the order in question. It contends that "the authority of a circuit court over the actions of its appointed guardians is virtually unlimited." It says that the circuit court as the "superior guardian" had the authority to act on behalf of its ward over the objection of the "inferior guardian" and his attorneys. The hospital refers to various statutory provisions dealing with the power of a circuit court to appoint guardians, to define their duties, and to supervise and approve their handling of the ward's estate. *See, e.g.,* Code §§ 37.1-132, -138, -141, -142, and Code § 26-17. The hospital concludes that the court has "the ultimate power over the ward." It says the purpose of Code § 8.01-424(B) is to limit the guardian's ability to compromise a claim, not to curtail the court's inherent powers over the ward's estate. According to the hospital, while the court has the authority to "confirm" a guardian's prior approval, it can also "approve" a compromise on its own.

We disagree. The hospital's emphasis on a circuit court's supervisory powers over guardian and ward misses the point. The decision of this dispute is controlled by the plain language of § 8.01-424(B), relied on by the trial court to justify its action.

Section 8.01-424(B) provided, at the time of this controversy, as follows:

> "In case of damage to the person or property of a person under a disability, caused by the wrongful act, neglect or default of any person, when death did not ensue therefrom, any person interested in compromise of any claim for such damages, including any claim under the provisions of any liability insurance policy, may upon motion to the court in which the action is pending for the recovery of damages on account of such injury, or if no such action is pending, then to any circuit court, move the court to approve the compromise. The movant shall give reasonable notice of such motion to all parties who may be interested in the compromise."

■ According to the statute, the court is authorized to approve "the compromise," upon application to the court by anyone interested "in compromise" of a damage claim. The word "compromise," in this context, means agreement to terminate a controversy. *See* Black's Law Dictionary 260 (5th ed. 1979). A compromise arises from an agreement and an agreement contemplates acceptance of an offer. *Bangor-Punta Operations, Inc.* v. *Atlantic Leasing*, 215 Va. 180, 183, 207 S.E.2d 858, 860 (1974). When there is no meeting of the minds during settlement negotiations sufficient to create a valid contract, there is no agreement. *Montagna* v. *Holiday Inns*, 221 Va. 336, 347, 269 S.E.2d 838, 844-45 (1980).

■ In the present case, there was no meeting of the minds, there was no acceptance by the parties of an offer of settlement, and there was no agreement. Hence, there was no "compromise" for the court to approve. Indeed, counsel for the guardian explicitly rejected the hospital's effort to compromise for $125,000.

■ At the time the court acted, only a settlement offer existed. The trial court recognized this fact because the order provided for "acceptance of the settlement offer." Counsel for the hospital recognized this fact because, during oral argument of the appeal, he agreed that an "offer of compromise" was presented to the trial court for approval. But the court acted prematurely.

■ Explicitly, the statute gives the court power to approve a compromise. Implicitly, the court has the power under the statute to disapprove a compromise. However, neither the statute nor any "inherent" power the court may possess permits the court to create a settlement and then to impose such a settlement upon a guardian. That was done in this case, albeit with a demonstrated concern by the trial court about the best interests of the ward. If the court was satisfied that the guardian was not acting in the best interests of the ward by recklessly rejecting reasonable settlement offers in order to gamble on the outcome of litigation, the court, in the exercise of its power over guardians, could have removed the guardian and appointed another in his place.

■ We hold the trial court erred in forcing the guardian to accept the hospital's offer of settlement. Therefore, the order appealed from will be reversed and the case will be remanded for further proceedings on the plaintiff's claim against the hospital.

*Reversed and remanded.*