**Alexandria**

TONI C. RICHARDSON

v.

CHARLES W. RICHARDSON, JR.

No. 1029-88-4

Decided May 22, 1990

COUNSEL

David L. Duff (Duff & McLaughlin, on brief), for appellant.

Richard J. Colten (Surovell, Jackson, Colten & Dugan, P.C., on brief), for appellee.

OPINION

**COLEMAN, J.**—In this divorce case, the trial court's decree incorporated, pursuant to Code § 20-109.1, an oral agreement purportedly reached between the parties on the eve of trial which resolved their property and equitable distribution claims.

The wife, Toni Richardson, appeals the decree which ratified and incorporated the oral settlement, contending that the parties never reached a final, valid, and binding settlement agreement. We hold that an oral agreement which compromises and settles the property and equitable distribution issues in pending divorce litigation may be a valid and binding contract without being reduced to writing. In this case, the evidence supported the trial court's finding that the oral contract between the parties was not conditioned upon the agreement, the terms of which were read into the record, being reduced to writing and signed by the parties. We uphold the trial court's determination that the parties reached an oral agreement which was certain and complete. Ample credible evidence existed to support the trial court's findings. Therefore, we affirm the trial court's decree which incorporated the parties' settlement agreement.

The parties' divorce decree reserved for later adjudication the issues of equitable distribution, support, custody, and related questions. After concerted but unsuccessful efforts to resolve these issues, the parties were prepared to go to trial. On the day of trial, the parties continued their negotiations and arrived at a compromise settlement just as their case was called. Counsel informed the court of the settlement, and the court had both counsel recite the terms of the oral agreement into the record. One of the terms recited into the record was that the wife would receive a portion of the husband's monthly pension benefits until she remarried. After this stipulation, the court asked the parties whether they understood the settlement terms and whether they accepted the settlement. To this inquiry, the wife replied, "I believe it is," and the husband replied, "Yes." The trial court interpreted both the wife's and the husband's responses to be affirmations and acceptances of the terms of the agreement. However, when the draft of the decree embodying the agreement was presented to the wife for endorsement, she objected and refused to endorse the decree. She contended that the termination of her portion of the husband's military pension upon remarriage was not an agreed upon limitation to her continuing to receive those benefits.

The trial court convened a hearing to determine whether an oral settlement agreement had been consummated between the parties. The wife argued that the parties had not reached an agreement because, first, the terms concerning the military pen-

sion had never been mutually agreed to, and second, the parties had contemplated as a prerequisite to a final agreement that a formal, written contract would be drafted and signed. In support of her argument that they had no meeting of the minds concerning remarriage as a condition for terminating the pension benefits, the wife testified that she did not hear or understand opposing counsel's recitation of those provisions into the record because, at the time, she and her counsel were discussing the real property provisions which had been recited into the record immediately before the provisions concerning the husband's military pension. The trial court apparently rejected this contention that the wife did not understand or agree to a term of the contract. In fact, the chronology of presentation of the settlement provisions at the trial court hearing, as they appear from the record, directly refutes the wife's explanation and argument. The terms of the agreement concerning the military pension were recited into the record before the terms pertaining to the real estate. The evidence supports the ruling of the trial court, reached at the conclusion of the *ore tenus* hearing, that both parties fully understood the terms of the settlement and expressed their assent to the agreement; thus, the court concluded that they were bound by its terms as stated and recorded in the trial record. *See Wells v. Weston*, 229 Va. 72, 78-79, 326 S.E.2d 672, 676 (1985).

We first address whether the basic elements required for a valid and enforceable contract were proven, before we consider whether the parties intended that their agreement be in writing or whether such contracts are required to be in writing. *See Valjar, Inc. v. Maritime Terminals, Inc.*, 220 Va. 1015, 1018, 265 S.E.2d 734, 736 (1980). Agreements between divorcing spouses to settle property or support claims are contracts; therefore, the same rules generally applicable to contracts control the issue whether divorcing spouses have reached a valid agreement. *Tiffany v. Tiffany*, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985); *Smith v. Smith*, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986). To be valid and enforceable, the terms of an oral agreement must be reasonably certain, definite, and complete to enable the parties and the courts to give the agreement exact meaning. *Smith v. Farrell*, 199 Va. 121, 128, 98 S.E.2d 3, 7-8 (1957). While this agreement was oral, its terms were recorded verbatim in the court's record, where they are preserved for the trial court and this court to review and ascertain. The provisions must be clear and definite as to what is

required of the parties. This record makes clear that the parties considered and agreed upon a comprehensive plan to settle the issues between them. Each separate issue was resolved upon terms which were succinctly and precisely set forth in the record. We uphold the ruling of the trial court that the agreement between the parties was sufficiently definite to enable the trial court to determine the intent and agreement of the parties and to enforce the contract.

■■■ Where parties involved in contract negotiations do not expressly state that the validity of an agreement between them is subject to the preparation, approval, and signing of a formal written contract, it is a question of fact whether they intended that no contract would exist until a written agreement was executed. The issue is whether the parties intended that the contract would become binding at the moment they mutually assented to the terms and that the agreement would be "written out and signed only as a memorandum for the parties." *Atlanta Coast Realty Co. v. Robertson's Ex'r*, 135 Va. 247, 254-55, 116 S.E. 476, 478 (1923); *Boisseau v. Fuller*, 96 Va. 45, 47, 30 S.E. 457, 457-58 (1898). Where the parties agree that a formal, executed writing is a prerequisite to a binding contract, there is a rebuttable presumption that no contract existed between them until the writing is made and signed. However, when there is no understanding that the agreement will be reduced to writing as a prerequisite to the formation of a contract, no presumption arises, and the proponent of the oral contract has the burden of proving all elements of a valid enforceable contract. *Atlantic Coast Realty Co.*, 135 Va. at 253-54, 116 S.E. at 478. Here the terms of the agreement were read into the record and clearly, as the court found, no condition precedent was stated; in such cases, we will not imply a condition, requiring that the terms be reduced to a signed written contract to be enforceable. When a writing is not a prerequisite to contract formation and where the terms are exact and complete, the remaining question is whether there was a meeting of the minds of the parties to the terms of the oral contract. *Harris v. Citizens Bank & Trust Co.*, 172 Va. 111, 143, 200 S.E. 652, 665 (1939). If so, the contract is enforceable. *Id.*

■ "A meeting of the minds requires a manifestation of mutual assent, and a party's mental reservation does not impair the contract he purports to enter." *Wells*, 229 Va. at 79, 326 S.E.2d at

676. The terms of the agreement were not obscure, nor were the concepts unfamiliar to the litigants. Thus, the outward expression of the parties in assenting to the agreement will control. *See id.*

■ While wife's response, "I believe it is," to the question whether the recited provisions accurately stated the contract might be construed as equivocal depending on the intonations, the trial court had the opportunity to hear and observe the parties and ascertain the meaning of the response. A trial court's determination, when based upon an *ore tenus* hearing, "will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Box v. Talley*, 1 Va. App. 289, 293, 338 S.E.2d 349, 351 (1986). The trial court found that the parties mutually understood and fully agreed to the terms of the contract with the intent that it be binding upon them as of the moment they gave their assent, without further formality. Under the circumstances, the trial court was justified in finding that the wife had assented to this term of the agreement.

The wife further claims that she was operating with the understanding that judicial procedure required that the stipulated agreement which had been dictated into the record would be transcribed into a written decree, which either the parties or their counsel must endorse before it could be entered by the court. The procedural requirement for entry of decrees does not control the validity of a contract and does not impose upon every agreement to settle pending litigation that the agreement must be incorporated in an order or decree to be enforceable.[1] The expectation of the parties that the terms of the agreement would be incorporated into the court's order is tantamount to providing that a memorandum of the agreement, and not a formal written contract, will be prepared. We find the determination by the trial court that the Richardsons mutually assented to an agreement to settle their property and equitable distribution claims on terms that were clear and certain is supported by credible evidence and we affirm that holding. *See Shaughnessy v. Shaughnessy*, 1 Va. App. 136, 138-39, 336 S.E.2d 166, 168 (1985). The existence of the contract

---

[1] *See Jackson v. Jackson*, 14 Md. App. 263, ____, 286 A.2d 778, 782 (1972), holding that a property settlement agreement, otherwise required to be in writing because it transferred real estate, was removed from the statute of frauds because the stating of the terms into the record constituted a sufficient "memoranda" or "writing" as required by the statute.

was not conditioned upon the endorsement of the decree incorporating it.

■ The remaining issue is whether a property settlement agreement which occurs during pending divorce litigation is required to be in writing under the Statute of Frauds, Code § 11-2, or whether Code §§ 20-149 and 20-155 require such agreements to be in writing. We hold that those code sections, to the extent that they may require "marital agreements" to be in writing, do not apply to compromises and settlement agreements to pending litigation which incidentally include issues of property and spousal support.

■ "The parties to a pending lawsuit may by oral agreement compromise and settle the same, which will bind them although not reduced to writing. . . . Where parties to a case pending in court enter into a definite, certain and unambiguous oral settlement agreement, compromising the issue, and there being no denial of the agreement, it is the duty of the court to make the agreement the judgment of the court and thereby terminate the litigation." *Herndon v. Herndon*, 227 Ga. 781, ____, 183 S.E.2d 386, 388 (1971). An agreement to settle litigation does not come within the ambit of the Virginia Statute of Frauds. Code § 11-2. The integrity of such agreements and their enforceability are already subject to the scrutiny of the courts. *See Harris*, 172 Va. at 143, 200 S.E. at 665. Nor do such agreements come within the proscription of Code §§ 20-149 and 20-155. These code sections deal with prenuptial and postnuptial agreements between spouses or prospective spouses. Such agreements provide for the parties' rights in the event of separation or divorce. The agreement in this case, unlike a postnuptial agreement, settles the issues in controversy in pending litigation. The concerns that underlie the requirement that prenuptial or postnuptial agreements be in writing do not exist for compromises or settlements of pending litigation, even where the suit is for divorce, because the compromise is subject to the supervision and scrutiny of the court. We hold that contracts to settle divorce litigation, even though they have spousal support or the property of the spouses as part of their subject matter, are not within the contemplation of Code §§ 20-149 and 20-155. Thus, as oral contracts, agreements to settle divorce litigation need not be in writing and must contain only the essential elements of a valid contract, *i.e.*, an offer and acceptance

supported by valid consideration. *Bangor-Punta Operations, Inc. v. Atlantic Leasing, Ltd.*, 215 Va. 180, 183, 207 S.E.2d 858, 860 (1974); *see also Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980); *Gunn v. Richmond Community Hosp.*, 235 Va. 282, 286, 367 S.E.2d 480, 482 (1988).

The termination of disputed claims is a valid and sufficient consideration to support a settlement agreement. Thus, where, as here, there is mutual assent and valuable consideration given, a valid contract exists. *See Montagna*, 221 Va. at 346, 269 S.E.2d at 844.

Although a divorce court is not bound to approve in its divorce decree a settlement agreement between divorcing parties, and is required to exercise its discretion in adjudicating property, support, and custody issues as provided in Code §§ 20-107.1 and 20-107.3, a court "may affirm, ratify and incorporate by reference in its decree dissolving a marriage or decree of divorce. . . any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties, or. . . the care, custody and maintenance of their minor children, or establishing or imposing any other condition or consideration, monetary or nonmonetary." Code § 20-109.1. Settlement agreements between parties to lawsuits are designed to put an end to litigation and are favored by the law. *Stamie E. Lyttle Co. v. County of Hanover*, 231 Va. 21, 26, 341 S.E.2d 174, 178 (1986). Where parties to a pending case enter into a definite, certain and unambiguous oral settlement agreement, in the absence of good cause not to do so, the court should incorporate the agreement in the judgment of the court and thereby terminate the litigation. *Herndon*, 227 Ga. at ____, 183 S.E.2d at 389.

In summary, we find that credible evidence exists to support the trial court's finding of a valid contract which settled the property and equitable distribution claims between the parties, and therefore we do not address the appellee's claims of estoppel, waiver, and reliance. *See Valjar*, 220 Va. at 1019, 265 S.E.2d at 737. The decree of the trial court is affirmed.

*Affirmed.*

Baker, J., and Keenan, J., concurred.