## CIRCUIT COURT OF GREENE COUNTY

Cheryl C. Deane,
Executrix, etc., et al.

v.

Hubert Andrew Morris

June 24, 1991

Case No. 1822

By JUDGE PAUL M. PEATROSS, JR.

This cause came on for hearing before the Court on May 3, 1991, on the defendant's demurrer, which alleged that the Bill of Complaint was insufficient as a matter of law because it did not allege that the contract between the parties was made in writing as required by § 20-147 *et seq.* of the Code of Virginia of 1950, as amended, and on the defendant's Motion to Strike out the Bill of Complaint as to any relief other than forfeiture of curtesy.

### Facts of Case

Christine Courtney Morris died April 6, 1990, at the age of 57 from cancer. At the time of her death, she owned certain real property located in Greene County. At the time of her demise, she was the wife of respondent, Hubert Andrew Morris, whom she married on September 9,

1989. Approximately one month after the marriage, Mr. and Mrs. Morris each had a will prepared by the same attorney. The will of Mrs. Morris made no provision whatsoever for Mr. Morris but left all of her estate to her children and grandchildren. Mr. Morris's will provided only for a life estate in his residence for Mrs. Morris and left all of the remainder of his estate to his brother-in-law and his nieces.

Upon the death of Christine Courtney Morris, her daughter, Cheryl C. Deane, qualified as executrix of her estate on April 13, 1990, pursuant to a nomination by the will of October 15, 1989, which was probated in the Greene County Circuit Court Clerk's Office. On or about October 2, 1990, Mr. Hubert Morris renounced the will of Mrs. Morris and made certain claims against Mrs. Morris's estate, including a curtesy interest in real property, a family allowance, exempt property, and a distributive share of personal property.

The Bill of Complaint sets forth further allegations that prior to the death of Christine Courtney Morris, Hubert Morris committed such acts that amounted to desertion from the marriage to Mrs. Morris and that said desertion continued until the death of Mrs. Morris.

The facts alleged in the Bill of Complaint further claimed that by actions and agreements, Mr. and Mrs. Morris entered into a contract not to assert an interest in each other's estate.

## Questions Presented

1. Do the separate wills executed at the same time by Mr. and Mrs. Morris constitute a written contract which satisfies § 20-147 *et seq.* of the Code of Virginia of 1950, as amended?

2. If desertion is shown by the evidence, does Mr. Morris forfeit only his right of curtesy, or does he also forfeit a family allowance under § 64.1-151.1 of the Code of Virginia of 1950, as amended, an interest in exempt property pursuant to § 64.1-151.2 of said Code, and his right to take a one-third interest in the personal property of Mrs. Morris pursuant to § 64.1-16 of the Code?

*Discussion of Authority*

1. The plaintiffs in this case, who are wife's beneficiaries under her will, claim that the husband and wife made an agreement to leave their respective interests in their joint and separate property to their own families. The agreement was made after the marriage was begun and should be controlled by § 20-155 of the Code of Virginia of 1950, as amended, which deals with marital agreements.

> Married persons may enter into agreements with each other for the purpose of settling the rights and obligations of either or both of them, to the same extent, with the same effect, and subject to the same conditions, as provided in §§ 20-147 through 20-154 for agreements between prospective spouses, except that such marital agreements shall become effective immediately upon their execution.

However, these agreements, like prenuptial agreements, have certain formalities provided in § 20-149 of the Code. "A prenuptial agreement shall be in writing and signed by both parties. Such agreement shall be enforceable without consideration and shall become effective upon marriage."

The language here in clear and unequivocal. "*A* [ ]marital agreement *shall* be *in writing* and *signed by both parties*" (emphasis added). *Id.* Surely, the legislature saw a couple who wanted to make an agreement of the type in this case writing it down as a contract, stating the terms, and having the document signed by both parties.

Both sides in this case admit that there is no single document memorializing such an agreement signed by both parties. The plaintiff claims that the two wills, when read together (as is done at time with letters between contracting parties) form a document showing the intent of the parties. The Court is not aware of any authority directly on point which supports a notion of two wills acting as a contract and overcoming a writing and signature deficiency. Most cases that have dealt with § 20-147 *et seq.* are divorces. *Richardson v. Richardson*, 10 Va. App. 391, 398 (1990), deals with the writing requirement under Sections 20-155 and 20-149. In that case, a couple were

negotiating a divorce settlement and came to an oral agreement which the court enforced. *Id*. "The concerns that underlie the requirement that prenuptial or postnuptial agreements be in writing do not exist for compromises *or settlements of pending litigation, even where the suit is for divorce, because the compromise is subject to the supervision and scrutiny of the court*" (emphasis added). *Richardson*, 10 Va. App. at 398. The court enforced an oral contract but limited that allowance to a realm directly under its thumb, settlements of pending divorces. Wills, on the other hand, are not closely scrutinized in their inception. When a postnuptial agreement is entered into with regards to wills, the court is not there to supervise. Such an agreement could possibly not vest in any property for years. The writing requirement insures that a change of heart by one spouse does not work an injustice on the other who was acting in reliance on the promises in the agreement.

Plaintiff would have the Court look to the two wills as an indication of both an intent to form a marital contract and the terms of that contract and either estop the defendant from claiming that there was no writing as required by § 20-149 or find that the two papers formed one contract between the husband and wife, and in so doing block the plaintiff's claim of curtesy. This is both an expansion of the law and a circumvention of the applicable statute. Sections 20-155 and 20-149 allow marital agreements and give the requirements of their form -- they must be written and signed. The law is clear, and the defendant's demurrer is sustained.

2. As to the second question presented, § 64.1-151.1 of the Code provides for a family allowance.

> Upon the death of a domiciliary of this Commonwealth, the surviving spouse and minor children whom the decedent was obligated to support are entitled to a reasonable allowance and money out of the estate for their maintenance during the period of administration, which may not continue for longer than one year . . . . The family allowance has priority over all claims against the estate.

The only question here is whether the decedent was obligated to support the defendant, and that is a question of fact. Although there may be some contention about "whom the decedent was obligated to support . . ." applies to, i.e., "surviving spouse" or "minor children," the Court deems that a reasonable construction is that it does apply to the surviving spouse as well as minor children. Therefore, the factual question must be left to an evidentiary hearing, and the motion to strike out plaintiff's claim to defeat the family allowance is denied.

3. Section 64.1-151.2 of the Code provides for exempt property.

> In addition to the family allowance, the surviving spouse of a decedent who was domiciled in this Commonwealth is entitled from the estate to value not exceeding $3,500.00 in excess of any security interest therein and household furniture, automobiles, furnishings, appliances and personal effects . . . . Rights to exempt property . . . have priority over all claims against the estate but not over family allowance . . . [and/or] in addition to any benefit or share passing to the surviving spouse.

The plaintiffs' claim of desertion has no relevance to this claim by defendant to exempt property as § 64.1-23 deals only with tenancy by the curtesy, dower, distributee or heir. Therefore, the Motion to Strike plaintiff's claim to eliminate exempt property because of desertion is sustained.

4. Section 64.1-16 of the Code provides as follows: "If renunciation be made, the surviving spouse shall, if the decedent left surviving children or their descendants, have one-third of the surplus of the decedent's personal estate mentioned in § 64.1-11 . . . ."

Section 64.1-23 of the Code provides as follows:

> If a husband or wife willfully desert or abandon his or her consort and such desertion or abandonment continues until the death of the consort, the party who deserted the deceased consort shall be barred of all interest in the estate

of the other as a tenant by dower, tenant by the curtesy, distributee or heir.

The question thus becomes whether or not Mr. Morris is a statutory distributee of one-third of the surplus of Mrs. Morris's personal estate by his act of renunciation.

In the case of *First Nat. Bank v. Hughson*, 194 Va. 736 at 747 (1953), it is stated as follows: "In other words, in such case, if she renounced the provision made, or no provision was made, she was thereby placed in precisely the attitude she would have been in had the husband died intestate as to his personal estate." Based on this language, the Court finds that Mr. Morris is a distributee under § 64.1-23 by reason of his renunciation. The Motion to Strike plaintiff's claim to eliminate the one-third interest in the surplus of decedent's personal estate by reason of desertion is denied.