COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Bray and Bumgardner
Argued at Chesapeake, Virginia


JEFFREY WARREN AINSLIE

                                    MEMORANDUM OPINION* BY
v.    Record No. 2030-99-1          JUDGE SAM W. COLEMAN III
                                         JUNE 6, 2000
CYNTHIA GAYE MORRIS AINSLIE


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                     Frederick B. Lowe, Judge

          James R. McKenry (J. Andrew Basham; Heilig,
          McKenry, Fraim & Lollar, P.C., on brief), for
          appellant.

          Henry E. Howell, III (Richard H. Doummar;
          Doummar & Howell, on brief), for appellee.


     Jeffrey Ainslie appeals the trial court's order

interpreting and enforcing the parties' oral property settlement

agreement which was incorporated by reference in the final

divorce decree.  He argues that the court erred in declining to

enforce the portion of the property settlement agreement that

provides he is to receive a credit for the value of all property

taken by Cynthia Ainslie from the itemized list of assets,

including the value of property that had previously been

designated as Cynthia Ainslie's separate property.  We agree and

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

reverse and remand the case with direction that the court enforce the terms of the agreement as hereinafter set forth.

## BACKGROUND

On July 26, 1986, the parties were married, and on July 9, 1998, a final decree of divorce was entered. An initial hearing was held in November 1997 before a Commissioner in Chancery to resolve issues concerning the division of marital property. At the request of the Commissioner, the parties produced an itemized list of all of their real and personal property to aid in the division of the assets. In addition to listing the estimated value of each item, the list also designated whether the party preparing it considered the item to be separate or marital property. After preparing the list, the parties tentatively agreed on a settlement. However, a dispute arose regarding the interpretation of the settlement agreement and a series of hearings were held in order to equitably distribute the property.

At one of those hearings in the circuit court on May 19, 1998, the parties again reached a settlement agreement. The parties agreed that Jeffrey Ainslie would give Cynthia Ainslie $450,000, less $20,000 that he had previously paid to her and that Cynthia Ainslie, as a credit against the $450,000, could take whatever property she desired at its itemized value from the list. The final decree affirmed, ratified, and incorporated

the settlement agreement between the parties "set forth in the hearing on May 19, 1998." The court ordered that:

> [Cynthia Ainslie] shall receive a combination of lump sum spousal support and as equitable distribution of assets. The total amount that [Cynthia Ainslie] is to receive is $450,000.00 subject to a credit of $20,000.00 which was previously paid by [Jeffrey Ainslie]. [Cynthia Ainslie] may then choose from the list referenced and utilized at the Court's hearing on May 19, 1998. [Cynthia Ainslie] may select assets by giving written notice to [Jeffrey Ainslie] from the list above referenced and shall be deducted from the remaining $430,000.00. [Cynthia Ainslie] shall receive the sum of $180,000.00, which shall be a combination of cash and assets selected by [Jeffrey Ainslie] from the asset list pursuant to the settlement agreement, on or about June 30, 1998.

A dispute again arose regarding the interpretation of the settlement agreement. The disagreement concerned, in part, Cynthia Ainslie's refusal to credit Jeffrey Ainslie the designated value of some items from the list that were retained by her and also concerned damage to the marital residence Jeffrey Ainslie alleged occurred while Cynthia Ainslie occupied the residence. In December 1998, the trial court held another hearing at which Cynthia Ainslie testified that she had a "side agreement" with Jeffrey Ainslie, the terms of which were that she would be entitled to take all items on the list designated as her separate property in addition to other items on the list. Under these terms, Jeffrey Ainslie would receive credit against the

$430,000 for only those items that Cynthia Ainslie retained that were designated as marital property.  Items on the list that were designated as Cynthia's Ainslie's separate property, included furs, jewelry, linens, oriental rugs, and porcelain collectibles.

The trial court held another hearing in April 1999.  As a result of that hearing, the trial court ruled that the parties had not entered into a second or "side agreement" modifying the earlier agreement that had been approved and ratified in the final divorce decree.  Nevertheless, the court construed the earlier agreement to provide that the property designated on the list as Cynthia Ainslie's separate property was not part of the marital estate and that she was entitled to retain the property as her separate estate.  Accordingly, the court ruled that under the ratified agreement, Jeffery Ainslie would not receive credit for the value of those items designated as Cynthia Ainslie's separate property.

## ANALYSIS

On appeal, Jeffrey Ainslie argues that the trial court erred in refusing to credit him for the value of those items retained by Cynthia Ainslie which were designated on the list as her separate property.  He asserts that the oral settlement agreement, which was recorded at the May 1998 hearing, was a valid and enforceable oral contract and that the settlement agreement provided that he was to receive credit for the value

- 4 -

of all property retained by Cynthia Ainslie from the list, notwithstanding the item's classification as marital or separate.[1]  We agree.

"Property settlement agreements are contracts; therefore, we must apply the same rules of interpretation applicable to contracts generally."  Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985).  "[A]n oral agreement which comprises and settles the property and equitable distribution issues in pending divorce litigation may be a valid and binding contract without being reduced to writing."  Richardson v. Richardson, 10 Va. App. 391, 394, 392 S.E.2d 688, 689 (1990).  "To be valid and enforceable, the terms of an oral agreement must be reasonably certain, definite, and complete to enable the parties and the courts to give the agreement exact meaning."  Id. at 395, 392 S.E.2d at 690 (citation omitted).

"When a writing is not a prerequisite to contract formation and where the terms are exact and complete, the remaining question is whether there was a meeting of the minds of the parties to the terms of the oral contract."  Richardson, 10 Va. App. at 396, 392 S.E.2d at 690-91 (citation omitted).  "A

---

[1] Jeffrey Ainslie also argues that, to the extent that the settlement agreement was a partial agreement, the court erred in reforming the contract.  He asserts that absent a showing of fraud or mistake, a partial contract is invalid and unenforceable.  Because we find that the oral settlement agreement was valid, we do not address this contention.

meeting of the minds requires a manifestation of mutual assent, and a party's mental reservation does not impair the contract he purports to enter."  Wells v. Weston, 229 Va. 72, 79, 326 S.E.2d 672, 676 (1985) (citation omitted).  "The standard for determining the intent of the parties to an oral contract is one of reasonable expectation -- that is, the meaning which the party using the words should reasonably have expected them to be given by the other party."  Foreign Mission Board v. Wade, 242 Va. 234, 237-38, 409 S.E.2d 144, 146 (1991) (citations omitted).

> Whether the interpretation of the contract
> [is a matter of law or a question of fact]
> depends on whether the evidence on that
> issue was clear or ambiguous.  If, from the
> evidence presented, reasonable people could
> draw different conclusions as to reasonable
> expectations of the parties, the question of
> the meaning of the contract is properly
> presented to a [fact finder] for resolution.

Id. at 238, 409 S.E.2d at 146 (citation omitted).

At the May 1998 hearing, counsel for Jeffrey Ainslie stated the terms of the oral settlement agreement on the record.  The court questioned Cynthia Ainslie and heard extensive argument from counsel regarding the agreement.  In describing the list of assets and its division, counsel for Jeffrey Ainslie stated, "Now, the next thing speaks of what they are going to keep, and it is clearly understood that whatever they keep comes off -- whatever Mrs. Ainslie keeps comes off of the gross figure of

430 with the values assigned in the net equity debt/lien

. . . ."  In response, the following colloquy occurred:

> THE COURT:  Is that true of all of these items?
>
> [COUNSEL FOR JEFFREY AINSLIE]:  Yes, sir.
>
> THE COURT:  Even the items that are obviously jewelry items that belong to her?
>
> [COUNSEL FOR JEFFREY AINSLIE]:  Yes, sir.
>
>   *    *    *    *    *    *    *
>
> THE COURT:  So anything that she chooses to decide to keep off of this list would come off of the balance owing on the $430,000 at the rate of whatever the figure shown in the net equity column is?
>
> [COUNSEL FOR JEFFREY AINSLIE]:  That's correct.
>
> THE COURT:  Is that your understanding?
>
> [COUNSEL FOR CYNTHIA AINSLIE]:  There is one problem there having to do with the clothing, and it just came up, if we could have a moment to talk about it.
>
>   *    *    *    *    *    *    *
>
> [COUNSEL FOR CYNTHIA AINSLIE]:  I apologize, Your Honor.  The clothing issue we were looking towards are things other than clothing.  Everything else except for the clothing we agree to.
>
>   *    *    *    *    *    *    *
>
> [COUNSEL FOR JEFFREY AINSLIE]:  May I just explain?  Mr. Ainslie could care less about clothing.  His hobbies are electronics and they are all on here, and they are his personal things.

THE COURT:  I assume they were taken into consideration when you came up with the $430,000?

[COUNSEL FOR JEFFREY AINSLIE]:  Yes, sir. They are all in here.  If we're going to start doing that, then if we start pulling out this, that, or the other, its not going to work.

 *     *     *     *     *     *     *

THE COURT:  Is it true that was all taken into consideration when you came up with the 450?

[COUNSEL FOR JEFFREY AINSLIE]:  Yes.

THE COURT:  Minus the 20?

[COUNSEL FOR CYNTHIA AINSLIE]:  The 450, yes.  This list, D-1, yes.

 *     *     *     *     *     *     *

THE COURT:  I want to talk about the clothes.  From what you are telling me, is that theoretically under this fact situation -- and I want to make sure nobody is going into this thing blind.  Theoretically, under this settlement, you are talking about Mrs. Ainslie can say,  "The heck with the clothes, they are not worth $20,000 to me, I'll take the additional $20,000 and buy myself a whole new wardrobe?

[COUNSEL FOR JEFFREY AINSLIE]:  Yes.

 *     *     *     *     *     *     *

THE COURT:  Okay.  Now, Mrs. Ainslie, do you understand clearly the terms of the agreement that has been hammered out and dictated into the record here this afternoon?

MRS. AINSLIE:  Yes, I believe so.  Yes.

- 8 -

Here, the terms of the agreement, which were stated on the record at the May 19, 1998 hearing, were clear and definite. During the hearing, the court questioned both counsel and Cynthia Ainslie regarding the terms of the agreement. The court then specifically inquired whether Cynthia Ainslie understood that the value of any item that she retained from the list designated as Exhibit D-1 would be credited to the balance owed to her by Jeffrey Ainslie. Cynthia Ainslie agreed with the court's recitation of the terms of the agreement. The court also inquired as to whether the agreement included "items that are obviously jewelry items that belong to [Cynthia Ainslie]," and counsel replied, "Yes." Counsel for Jeffrey Ainslie informed the court that in drafting the property list and in determining the gross value of the estate, all of the parties' assets were listed, including items that are the parties' separate assets. Finally, the court clarified and summarized the terms of the agreement.

We find that there is no evidence to support a finding that the parties contemplated that Jeffrey Ainslie would not receive a credit for the value of the items retained by Cynthia Ainslie that were her separate property. Further, there is no evidence to support a finding that the notations on the asset list, designating the property as separate or marital, were considered in determining the distribution of the assets. The wife's, as

- 9 -

well as the husband's, separate property was included in the parties' estate and in valuing their assets. No reasonable person could conclude that, although the value of the wife's assets was used in valuing the estate, they would not be considered when dividing the estate.

Based on the extensive colloquy between the court, counsel, and the parties, the terms of the oral settlement agreement, to which both parties assented, are clear and unambiguous. The trial court approved and ratified the agreement and the parties have not amended it. Accordingly, under the terms of the agreement, we find that the trial court erred in failing to credit Jeffrey Ainslie the value of the items retained by Cynthia Ainslie, including those items that were her separate property in accordance with the agreement. The judgment of the trial court is reversed and the case remanded for entry of an order in accordance with this decision.

                                    Reversed and remanded.