## CIRCUIT COURT OF FAIRFAX COUNTY

O'Connor

v.

O'Connor

Case No. (Chancery) 168443

BY JUDGE JONATHAN C. THACHER

January 22, 2002

This matter came before the Court on December 7, 2001, on Defendant's Motion to Enforce Compliance with Parties' Memorandum of Understanding. The Court took the matter under advisement to determine if the Memorandum of Understanding requires the Plaintiff to provide "full disclosure" to the Defendant.

On October 26, 2000, the parties were scheduled to appear in this Court for a *pendente lite* hearing. The parties entered into a Memorandum of Understanding on the morning of the hearing to resolve the issues of property, support, and custody. (Mem. of Understanding ¶ B.) The parties then submitted an Agreed Order to the Court, which specifically ordered the parties to "comply with each and every provision set forth in said Memorandum of Understanding." (Agreed Order ¶ 1 (October 26, 2000).)

The relevant portions of the Memorandum of Understanding state that the parties entered into the "Memorandum of Understanding to set out the essential terms of custody, support, and property division which they intended to have incorporated into a fully integrated Separation and Property Settlement Agreement." (Mem. of Understanding ¶ B.) Additionally, the Memorandum of Understanding contains the following "Miscellaneous" provisions:

The parties agree to pursue a no fault divorce.

The parties agree that this Memorandum shall be incorporated into a court order which shall be submitted to the Fairfax County Circuit Court on October 26, 2000.

The Separation and Property Settlement Agreement shall contain standard provisions including but not limited to: indemnification, full disclosure and reliance on disclosures, releases, and reimbursement for counsel fees for enforcement.

The Parties shall exchange federal and state income tax returns each year until the youngest child is emancipated.

(Mem. of Understanding ¶ 9.) To date, the parties have been unable to resolve a "fully integrated Separation and Property Settlement Agreement" pursuant to the Memorandum of Understanding.

Over one year after the parties entered into the Memorandum of Understanding and had the Court enter an Agreed Order, Defendant now contends that the Memorandum of Understanding was a "conditional agreement" and that the Defendant is entitled to "full disclosure" pursuant to the Memorandum of Understanding so that "Mr. O'Connor can evaluate whether he intends to go forward with the conditional agreement." (Letter from Cottrell to Hicks of October 19, 2001, attached as Ex. C to Def.'s Mot. to Enforce Compliance with Parties' Mem. of Understanding.) Specifically, Defendant states he is entitled to Ms. O'Connor's "complete financial circumstances" and information regarding any "adulterous or other activity which would have a legal bearing on Mr. O'Connor's obligation to pay spousal support." *Id.* Defendant argues that the paragraph in the Memorandum of Understanding stating that "the separation and property settlement agreement shall contain provisions including ... full disclosure and reliance on disclosures" meant that, before a property settlement agreement was contemplated, full disclosure was required by the parties.

The Court disagrees with Defendant's interpretation of the Memorandum of Understanding and subsequent Agreed Order. The plain language of both agreements, in addition to the actions of both parties, indicates that the parties intended to resolve all issues on October 26, 2000. Further, the only issue remaining in this case is to draft a property settlement agreement incorporating the terms of the Memorandum of Understanding and including the standard provisions contained therein.

First, the plain language of the ten-page Memorandum of Understanding does not contemplate further disclosures by either party. It does not state that preparation of the property settlement agreement is predicated on further

disclosures. It simply states that the property settlement agreement will contain standard disclosure provisions.

Second, the subsequent acts of the parties and their counsel indicate that neither party was awaiting further disclosures, but rather that a property settlement agreement needed to be resolved. For example; on November 30, 2000, one month after the Memorandum of Understanding and Agreed Order were entered, counsel for Defendant sent a draft Separation, Support, Custody, and Property Settlement Agreement to counsel for Plaintiff. The draft agreement "incorporated the terms of the Memorandum of Understanding signed by the parties on October 26, 2000." (Letter from Shea to Hicks of November 30, 2000, attached as Ex. D to Def.'s Br. in Support of His Mot. to Enforce Compliance with Parties' Mem. of Understanding.) Of note, the draft agreement states:

> Both parties have knowledge of the extent, value, and character of properties owned by them separately and jointly and of their respective means, obligations, and needs....
>
> The parties acknowledge that this Agreement was negotiated and entered into based upon each party's knowledge and access to the other's books, records, and files without the use of discovery procedures available under the law and rules of the Supreme Court of the Commonwealth of Virginia.

*Id.* (Draft Separation, Support, Custody, and Property Settlement Agreement ¶¶ E & 16(d)(i).) Defendant's own counsel submitted a draft property settlement agreement, stating that the agreement was based upon information the parties had about each other. The Defendant did not make the first mention of the disclosure issue until one year after the original agreement had been made and after he had hired new counsel.

Defendant argues that the parties cannot be held to the terms of the Memorandum of Understanding because it contemplates the preparation of another agreement, the property settlement agreement. See *Richardson v. Richardson*, 10 Va. App. 391, 396, 392 S.E.2d 688 (1990) ("Where the parties agree that a formal executed writing is a prerequisite to a binding contract, there is a rebuttable presumption that no contract existed between them until the writing is made and signed."), overruled on other grounds by *Flanary v. Milton*, 263 Va. 20, 556 S.E.2d 767 (Va. App. Jan. 11, 2002).[1]

---

[1] Defendant also relies on *Echols v. Echols*, where the Court of Appeals of Virginia found that "no valid agreement existed between the parties" where a

12

However, *Richardson* involved an oral agreement that the parties contemplated would be reduced to a writing. See *id.* 10 Va. App. 391. In the present case, the Memorandum of Understanding was written, signed by both parties with each page initialed, and was specifically referenced in an Agreed Order entered by the Court on the same day the Memorandum of Understanding was entered by the parties.

Accordingly, this Court does not read the Memorandum of Understanding to provide for further disclosures involving either party's finances or personal information.[2] The only remaining issue in this case is to draft a property settlement agreement in accordance with the Memorandum of Understanding, including the proper standard provisions. Therefore, this Court denies Defendant's Motion to Enforce Compliance with Parties' Memorandum of Understanding.

April 12, 2002

This matter came before the Court on February 28, 2002, on Complainant's Motion for Attorney's Fees and Motion to Compel the

---

transcript of a purported property settlement agreement had been incorporated into the final decree of divorce. *Echols v. Echols*, No. 0531-85 (Va. App. July 13, 1987). In *Echols*, the parties concluded their settlement discussions by dictating a "Transcript of Statement" which was printed and added to the court file. *Id.* The "Transcript of Statement" contemplated that the oral agreements made therein would be reduced to writing and executed by the parties. *Id.* The court found that "the actions of both parties show that neither intended the 'Transcript of Statement' to be the final settlement of their rights pertaining to the divorce," and that "at no time was there an agreement or meeting of the minds between the parties." *Id.* at 2-3 (citation omitted).

The present case differs from *Echols* because the parties in this case agreed to resolve "all issues of property, support, and custody" and "set out the essential terms of custody support and property division" in the Memorandum of Understanding. The Memorandum of Understanding was signed by both parties. This Court ordered that the parties comply with "each and every provision" of the Memorandum of Understanding. There is simply no evidence in this case that the parties did not intend the Memorandum of Understanding to be a settlement of property, custody, and support issues or that the parties did not have a meeting of the minds. To the contrary, and as discussed above, both parties' actions indicate that the Memorandum of Understanding was an agreement to resolve their property, custody, and support issues without further disclosures.

[2] However, the Memorandum of Understanding does state that the parties are to exchange federal and state income tax returns every year. (Mem. of Understanding ¶ 9.)

Defendant to Execute a Property Settlement Agreement. The Court ruled from the bench on the issue of the Property Settlement Agreement and took the Complainant's Motion for Attorney's Fees under advisement. Both parties submitted supplemental briefs.

On October 26, 2000, the parties entered into a ten-page Memorandum of Understanding on the morning of their *pendente lite* hearing to resolve the issues of property, support, and custody. (Mem. of Understanding ¶ B.) The parties then submitted an Agreed Order to the Court, which specifically ordered the parties to "comply with each and every provision set forth in said Memorandum of Understanding" and also incorporated the property, support, and custody provisions that were contained in the Memorandum of Understanding. (Agreed Order of October 26, 2000; see also Mem. of Understanding ¶ 9 ("The parties agree that this Memorandum shall be incorporated into a court order which shall be submitted to the Fairfax County Circuit Court on October 26, 2000.").) The parties intended the Memorandum of Understanding to be "incorporated into a fully integrated Separation and Property Settlement Agreement." (Mem. of Understanding ¶ B.) The Memorandum of Understanding also stated that the Separation and Property Settlement Agreement shall contain standard provisions including indemnification, full disclosure, reimbursement for counsel fees for enforcement, etc. (Mem. of Understanding ¶ 9.)

After the parties were unable to resolve a Separation and Property Settlement Agreement, as directed in the Agreed Order and Memorandum of Understanding, Defendant brought a Motion to Enforce Compliance with Parties' Memorandum of Understanding, seeking full disclosures purportedly pursuant to the Memorandum of Understanding. This Court denied Defendant's motion and stated that the "the only issue remaining in this case is to draft a property settlement agreement incorporating the terms of the Memorandum of Understanding and including the standard provisions contained therein." *O'Connor v. O'Connor* (Fairfax Cir. Ct. January 22, 2002), *supra*. Complainant then brought this motion to obtain the attorney's fees expended in defending the Motion to Enforce.

The Memorandum of Understanding in this case does not contain an attorney's fees provision. Rather, it contemplates an attorney's fees provision in the subsequent Property Settlement Agreement. (Mem. of Understanding ¶ 9.) While it is clear that the parties intended to have a Property Settlement Agreement that would provide for attorney's fees, because the parties have been unable to reach such an agreement, attorney's fees cannot be awarded under that provision of the Memorandum of Understanding.

14

Defendant proffers Virginia Code § 20-109(C) as controlling in this case. Section 20-109(C) states:

> if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract.

Va. Code § 20-109(C). The cases cited by Defendant that applied § 20-109(C) concerned contracts that specifically contained attorney's fees provisions. See *Sanford v. Sanford*, 19 Va. App. 241, 450 S.E.2d 185 (1994); *Schneider v. Schneider*, 1997 Va. App. LEXIS 589 (September 9, 1997). The parties did enter into a contract before the entry of a final decree in this case. However, unlike the cases cited by Defendant, the contract is silent as to attorney's fees; it simply states that the Property Settlement Agreement shall contain an attorney's fees provision. Accordingly, an order directing counsel fees would not violate § 20-109(C) or its common law application.

However, "costs may be awarded to either party as equity and justice may require." Va. Code § 20-99(5). Further, the Court may, in its discretion "at any time pending a suit ... make any order that may be proper ... to enable such spouse to carry on the suit...." Va. Code § 20-103(A)(ii). The Virginia Court of Appeals has interpreted these Code provisions to include awards for attorney's fees. See *D'Auria v. D'Auria*, 1 Va. App. 455, 461, 340 S.E.2d 164 (1986) (citing Va. Code § 20-99) ("The allotment of costs and attorney's fees is a matter within the sound discretion of the trial court."); *Gibson v. Gibson*, 5 Va. App. 426, 435, 364 S.E.2d 518 (1988) (same). Complainant accrued legal fees and costs totaling $8,193.54 for the Defendant's Motion to Enforce Compliance. Taking into consideration the income and financial circumstances of the parties, this Court finds that equity and justice require the Defendant to pay attorneys' fees for the Complainant's defense of the Motion to Enforce Compliance. Therefore, Complainant's Motion for attorney's fees and costs is granted.