COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Felton
Argued at Alexandria, Virginia


KIMBERLY M. MATTINGLY

MEMORANDUM OPINION[*] BY
v.      Record No. 2556-04-4      CHIEF JUDGE JOHANNA L. FITZPATRICK
FEBRUARY 28, 2006
DANIEL T. McCRYSTAL


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
R. Terrence Ney, Judge

Kimberly M. Mattingly, *pro se*.

David E. Roop, Jr. (Michelle C. Thomas; Condo Roop Kelly &
Byrnes, P.C., on brief), for appellee.


Kimberly Mattingly (mother) appeals the entry of a final amended custody and visitation

decree. Mother contends that the trial court erred in entering the decree because the oral

agreement on which the decree was based was not a binding legal contract. Alternatively,

mother argues that the trial court erred in entering the decree because the decree did not

accurately reflect the agreement reached by mother and Daniel McCrystal (father) that was

recited in open court.[1] We disagree and affirm the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Initially we note that several of mother's objections were not properly raised at trial and so consideration of these issues is barred on appeal. See Rule 5A:18.

> The main purpose of requiring timely specific objections is to afford
> the court an opportunity to rule intelligently on the issues presented,
> thus avoiding unnecessary appeals and reversals. The purpose of
> Rule 5A:18 is to allow the trial court to correct in the trial court any
> error that is called to its attention.

I.  FACTS

On appeal, we view the evidence in the light most favorable to father, the party prevailing below.  Brown v. Burch, 30 Va. App. 670, 681, 519 S.E.2d 403, 408-09 (1999).  So viewed, the evidence establishes that mother and father were married in 1991 and separated in 1999.  They have one minor child of the marriage, Daniel.  In 2001, the parties executed a marital settlement agreement (MSA) which set forth a detailed visitation schedule and required that any modifications be in writing.  The final decree of divorce, signed in 2001, incorporated the terms of the MSA.  Two consent orders subsequently modified the initial visitation schedule.

In May 2004, both parties separately filed motions to modify visitation and custody.  During a hearing on the motions, on July 26, 2004, the parties spoke privately in order to resolve the disputed issues.  A new agreement was recited in open court and transcribed.  The terms included visitation for mother on alternate school-year weekends, revised visitation over summer break, alternate spring and Thanksgiving breaks, the elimination of most single-day holidays, and the agreement that Daniel would spend Halloween with whichever parent he was with at the time.  After the agreement was read into the record the trial court asked the parties if they understood and agreed with the terms.  Both parties stated they understood and agreed with the terms of the settlement.[2]

---

Cirrito v. Cirrito, 44 Va. App. 287, 314, 605 S.E.2d 268, 281 (2004) (internal citations omitted)).  This disposes of the following issues raised on appeal:  (1) that the parties' marital settlement agreement allowed no oral modification; (2) that the trial court unduly influenced mother to settle; and (3) that the trial court denied mother "limited" use of counsel.

[2] The trial judge then stated:

> All right.  I do not think that the settlement is exactly what either party wished.  Each of you probably had things that you wanted to see come out a little bit differently, yet I think the compromise is good, and I think it is fair to both parties, and most importantly fair to Daniel, and I commend each of you for giving up on some of these points in return for others.

When the parties reviewed the agreement, it became evident that the proposed schedule contained calendar errors.  The schedule would never allow father to see Daniel on Christmas day.  In addition, while the schedule was based on the assumption that there were forty-one weekends in the school year, there were actually only forty, resulting in the loss of a weekend to mother.  In an attempt to correct these errors, both parties submitted proposed orders to the court.

On October 1, 2004, the trial judge heard argument on the proposed orders and entered a final amended custody and visitation decree.  The trial judge found that father's proposed order corrected the problem with the Christmas holiday.  In response to mother's request, the trial judge allowed mother to have visitation with Daniel during the four-day fall holiday break on those weekends when she would normally enjoy visitation.  Mother also asked for additional changes.  She requested that she have visitation with Daniel on Halloween, that the provisions stating the trial judge had considered the factors listed in Code § 20-124.3 be omitted, that the parties switch the first two-week summer period so father would see Daniel on Father's Day, and that other provisions from the MSA be included.

The trial judge refused to grant visitation to mother on Halloween if she would not otherwise have it.  The trial judge agreed that the final order should state that both parents have

---

I think it is very good especially to have a fixed schedule.  I think it is even better that Daniel is not going to be on the road constantly, reducing his traveling to two weekends a month instead of three is a huge improvement, and alternating the Thanksgiving and spring breaks instead of trying to split them up is another huge improvement.

Also of course, having the summer in two week, three-week blocks is an additional improvement.  A child at that age should not have to be being shuttled back and forth constantly.  It is not good for him.  It is certainly not good for either of you.

So I always think it is better that where the parents involved can work these matters out than have a complete stranger come and do it himself or herself.

joint legal custody, although the proposed order neglected to mention that issue. Mother added several amendments in the interlineations that both parties initialed.[3]

Mother endorsed the final order "seen and objected to" and wrote "[a]ll objections which were made in Court and which will be made in Motion for Reconsideration preserved." Mother filed a motion for reconsideration on the twenty-first day after the hearing, requesting that the parties be allowed to renegotiate the agreement, or in the alternative, that the trial court enter her proposed order. On December 13, 2004, the trial court declined to act on the motion because it no longer had jurisdiction.

## II. ANALYSIS

## A. CONTRACTUAL ARGUMENT

Mother first argues that the trial court erred in entering the final amended decree because the oral agreement on which the decree was based was not a valid legal contract. Mother contends that the essential elements of a valid contract must support a settlement agreement, and the agreement reached between the parties was deficient because it was based on mutual mistake, it was not sufficiently definite, and it was impossible to adhere to. We disagree.

A trial court's decision when based upon an *ore tenus* hearing is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it. Venable v. Venable, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986).

A settlement must be founded upon an agreement which contains "the essentials of a valid contract." Bangor-Punta Operations, Inc. v. Atlantic Leasing Ltd., 215 Va. 180, 183, 207 S.E.2d

---

[3] These provisions included fifteen minute phone calls with Daniel on Monday, Tuesday, and Thursday; "that all future motions and petitions shall be filed on the docket of Judge Ney"; "that both parties would have access to medical records, the right to attend routine doctor's visits, and the right to confer with the child's doctor and to otherwise participate in the child's health care"; and "whichever parent has the weekend adjacent to the Fall Student Holidays shall have the Fall Student Holidays."

858, 860 (1974). Moreover, "[t]he tendency of the courts is to give to contracts life and virility by interpretation of their fair intendment -- not to destroy them." Jennings v. Jennings, 12 Va. App. 1187, 1194, 409 S.E.2d 8, 13 (1991). Once a party acts affirmatively to enter into a settlement, "her second thoughts at a later time upon the wisdom of the settlement do not constitute good cause for setting it aside." Snyder-Falkinham v. Stockburger, 249 Va. 376, 385, 457 S.E.2d 36, 41 (1991).

An oral contract must contain terms that are sufficiently definite to enable the court to interpret the agreement. Richardson v. Richardson, 10 Va. App. 391, 395, 392 S.E.2d 688, 690 (1990), overruled on other grounds by Flanary v. Milton, 263 Va. 20, 556 S.E.2d 767 (2002).[4] Where an agreement is recited in open court and the parties both assent to its terms on the record, this Court has consistently affirmed decrees that incorporate the terms of that oral agreement. Id. at 397, 392 S.E.2d at 691; see also Turner v. Turner, 47 Va. App. 76, 622 S.E.2d 263 (2005). "If, as here, the parties are fully agreed upon the terms of the settlement and intend to be bound thereby, 'the mere fact that a later formal writing is contemplated will not vitiate the agreement.'" Snyder-Falkinham, 249 Va. at 385, 457 S.E.2d at 41 (citation omitted).

After the terms of the agreement were recited to the court, the following dialogue took place:

> THE COURT: Mr. McCrystal, do you understand the terms of the settlement as described by Mr. Roop?
>
> MR. McCRYSTAL: Yes, I do.

---

[4] The holding of Richardson, that "compromises and settlement agreements to pending litigation which incidentally include issues of property and spousal support" were not required to be in writing, was overruled in Flanary. Richardson, 10 Va. App. at 398, 392 S.E.2d at 691. Flanary held that Code § 20-155 required such agreements to be written. Flanary, 263 Va. at 24, 556 S.E.2d at 769. In response to that decision, the General Assembly in 2003 amended Code § 20-155 to provide that if the terms of a marital agreement are "(i) contained in a court order endorsed by counsel or the parties or (ii) recorded and transcribed by a court reporter and affirmed by the parties on the record personally, the agreement is not required to be in writing and is considered to be executed."

THE COURT: And are you in agreement with him?

MR. McCRYSTAL: Yes, I am.

THE COURT: Ms. Mattingly, do you understand the terms of the settlement as placed on the record by Mr. Roop?

MS. MATTINGLY: Yes, I do.

THE COURT: And are you in agreement with him?

MS. MATTINGLY: Yes, I am.

After further discussion of single-day holidays, the court again asked both parties if they "agree with everything that has been said" and both parties responded that they agreed. The oral agreement was detailed: it provided for alternate school-year weekends with a specific pick-up time, it contained a schedule for summer vacation, it detailed the number of days that each party would see Daniel over Christmas break, it alternated spring break and Thanksgiving break, and it eliminated visitation on single-day holidays. Thus, the terms of the oral agreement were sufficiently definite to support the entry of a final decree.

Additionally, mother will not be permitted "'to approbate and reprobate, ascribing error to an act by the trial court that comported with [her] representations.'" Boedeker v. Larson, 44 Va. App. 508, 525, 605 S.E.2d 764, 772 (2004) (quoting Asgari v. Asgari, 33 Va. App. 393, 403, 533 S.E.2d 643, 648 (2000)). Mother assented twice to the terms of the agreement recited in court. She cannot now claim that the agreement was invalid. The trial court did not err in entering the decree which was based on the terms of the oral agreement.

B. VARIANCE BETWEEN THE TERMS OF THE AGREEMENT AND THE DECREE

Mother next argues that the trial court erred in entering the final amended decree because the decree did not reflect the parties' agreement that was recited in open court. We disagree.

A court may "revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents

- 6 -

and the benefit of the children may require." Code § 20-108. The determinative factor in the trial court's decision to alter visitation is whether it is in the best interests of the child to do so. Code § 20-124.2; Edwards v. Lowry, 232 Va. 110, 112, 348 S.E.2d 259, 261 (1986). Indeed, the power of the court to act in this manner is unaffected by any contract entered into between husband and wife. Featherstone v. Brooks, 220 Va. 443, 358 S.E.2d 513 (1979). The trial court is free to adopt a visitation schedule not proposed by either parent because "[t]o limit a chancellor's remedy to only the [visitation] arrangement requested by one of the parents would unduly restrict his or her options and allow a parent to circumvent the statutory obligation of the chancellor to determine [visitation] based only upon the 'best interests of the child.'" Cloutier v. Queen, 35 Va. App. 413, 424, 545 S.E.2d 574, 579-80 (2001).

In the instant case, the trial court modified the terms of the oral agreement at the request of the parties to clarify the calendar errors made in the agreement regarding Christmas, summer vacation, and the school-year weekends. Both parties participated in crafting the terms of the agreement during the hearing, with concessions made by each side. The trial judge was clear that he thought it was in the best interests of Daniel not to alter visitation on Halloween, that the schedule was "fair to Daniel," and that it benefited Daniel not to be on the road constantly. Thus, the trial court did not err in entering the decree even though it varied slightly from the terms of the oral agreement recited before the court.

For the foregoing reasons, we hold that the trial court did not err in entering the final amended custody and visitation decree. We remand to the trial court for the limited purpose of correcting the clerical mistake so that the order reflects the parties' agreement and the trial court's holding that the parties continue to have joint legal custody of the minor child.

Affirmed and remanded.